## BUSTAMANTE et al. v. HAYNES et al.
### No. 8895.

Court of Civil Appeals of Texas. San Antonio.

Nov. 9, 1932.
Rehearing Denied Dec. 14, 1932.

Mann, Neel & Mann, of Laredo, P. W. Minter, of Hebbronville, John L. Dannelley, of San Antonio, and S. T. Phelps and W. W. Winslow, both of Laredo, for appellants.

Dodson & Ezell, of San Antonio, M. J. Raymond and L. H. Doty, both of Laredo, and U. S. Algee, of San Antonio, for appellees.

SMITH, J.

The case involves distinct land titles running back through the last hundred years to two grants originally issued by the government of the republic of Mexico to Antonio Zapata and Pedro Bustamante, respectively. The grants lie contiguously in Zapata county, and are known as the Villa and Las Comitas, respectively. Each embraces five leagues of land, but this suit directly concerns only 20,000 acres thereof, approximately, lying together under one fence.

Appellees claim and recovered a segregated two-fifths interest in the Comitas, amounting to 7,076.5 acres, and 12,252.37 acres in the Villa. Their title to the interest in the Comitas is based upon an alleged contract between one Leonard Haynes, now deceased, and the heirs of Pedro Bustamante, the original grantee, whereby the former undertook to clear the title of said heirs in the grant in consideration of the stated interest therein. Their record title rests upon a conveyance executed on February 11, 1893, by Manuel Bustamante individually and as attorney in fact for said heirs. Appellees claim the interest in the Villa through purchase and direct conveyances from the heirs of Antonio Zapata, the original grantee, to Haynes. And appellees claim all the lands here involved by limitation, as well as upon the record.

This suit was brought in the form of tres-

pass to try title by Alice Doran Haynes, widow of the said Leonard Haynes, and the Security First National Bank of Los Angeles, Cal., against two groups of defendants, to wit, the heirs of Pedro Bustamante, claimants of part of the Comitas grant, and the heirs of Antonio Zapata, claimants of part of the' Villa grant.

The number of defendants seems to run into the hundreds. Some were cited in person; most of them by publication. Some answered in person; others defaulted; others were represented by attorneys appointed by the court. Some disclaimed in toto or in part; some pleaded in abatement as well as in bar; others in bar only; others affirmatively, through cross-actions, as well as defensively.

Each group of defendants asserts ownership of a portion of one or the other of the two grants, but none claims interest in both. The two grants and the respective chains of title thereto are separate, distinct, unrelated. This diversity of grants, of titles, of parties, of claims, has involved the case in the greatest confusion, as is evidenced in the voluminous record and lengthy briefs.

The grants in controversy have been involved in previous litigation. State v. Bustamente, 47 Tex. 320; Haynes v. State (Tex. Civ. App.) 85 S. W. 1029; Id., 100 Tex. 427, 100 S. W. 912. The record, but not the opinion, in the case· first cited (State v. Bustamente, 47 Tex. 320), shows that Antonio Zapata and Pedro Bustamante, ancestors of the principal appellants in this case, settled up·on the lands in controversy in or before the year 1822, and obtained grants thereto in or before the year 1835, as evidenced by final titles issued by the Governor of the Mexican state of Tamaulipas, on January 2, 1848. Haynes v. State (Tex. Civ. App.) 85 S. W. 1029.

The condition of the titles to the two grants was uncertain prior to the settlement thereof by our Supreme Court in favor of appellants or their ancestors or assigns against the state of Texas, in the final disposition in 1907 of the case last cited, Haynes v. State, 100 Tex. 427, 100 S. W. 912.

The lands in those grants were never patented by the state of Texas to appellants or those under or from whom they claim; their titles were deraigned from the sovereignty through the original Mexican grants, the existence and validity of which were established by the decision cited last above.

There were five sets of defendants or interveners below. Appellees recovered judgment against all of them. Only three sets have appealed, to wit:

(1) Cipriana Garza de Reyes and associates, being the heirs of Desidora Bustamante de Reyes and her husband, Antonio Reyes, the said Desidora being one of the heirs at law of the original grantee, Pedro Bustamante, of the Comitas. This group disclaimed as to the Villa. It will be hereinafter referred to, for convenience, as "appellants Reyes."

(2) Dionicio Bustamante and associates, also descendants and heirs at law of Pedro Bustamante, who also disclaimed as to the Villa. This group will be designated herein as "appellants Bustamante."

(3) Francisco Coronado and associates, descendants and heirs at law of Antonio Zapata, original grantee of the Villa, who disclaimed as to the Comitas. This group will be designated "appellants Coronado."

▮ Appellants Coronado and Bustamante both urged pleas in abatement, which, being overruled below, are again urged here. These pleas are based upon the contention that the actions to recover the titles to the Comitas and Villa grants were improperly joined in one suit. It is true that each grant was made separately and distinctly from the other, and each took a distinct course apart from the other until the title asserted by appellees in parts of both grants merged into appellees. The two titles rest upon similar grants, issued at the same time by the same authority, to contiguous bodies of land, but to different grantees. And, while appellees' record title to each originated at different times and from separate conveyances, both were finally settled and established by the same judgment of the Supreme Court, and the limitation titles to both tracts, inclosed under one fence, fully concur and rest upon identical facts of possession. We conclude from this state of facts that the ruling of the trial court on the pleas in abatement did not constitute such abuse of discretion as to require this court to reverse.

▮ Appellants vigorously contend that appellees' pleadings were not sufficient as against the general demurrers. We have concluded that those contentions must be overruled in view of the familiar rule which requires the indulgence of every reasonable intendment to sustain the allegations of pleadings challenged by general demurrer.

It is first contended that appellees' pleadings must be tested by the strict rule prescribed in article 1977, R. S. 1925, which requires that the complainant set forth his chain of title in suits to recover title of persons required to be cited by publication; whereas, appellants contend, appellees, dependent upon heirship, did not in terms allege the fact, shown by the evidence, that the title of their grantor was connected only by heirship with the title of the original grantee. We conclude, however, that, giving effect to all intendments to which appellees were entitled, their pleadings in this respect were sufficient. In those pleadings all the instruments relied upon by appellees to show their title were specifically set out, and it was expressly alleged that appellees held their said title

through those conveyances "from the heirs" of the original grantees, specifically named. The whole context of the pleadings, as well as those specific allegations, at least when aided by reasonable intendment, amounts to allegations of heirship sufficient to satisfy article 1977, in the absence of special exceptions.

In further urging their general demurrers appellants insist that appellees' several pleas of limitation were insufficient. It is contended that the questioned pleadings did not allege the requisite possession after the accrual of appellants' cause of action. This contention rests upon a highly technical construction of the relation of certain dates set out in appellees' pleas of limitation, whereby the date of the beginning of the period of limitation is sought to be confused with, and substituted for, the date of ouster. A reasonable view of the whole pleading shows the date of ouster to be at the end, and not at the beginning, of the limitation period alleged, and we overrule appellants' contention as being hypercritical.

■ Appellants further urge their general demurrer upon the ground that appellees' pleadings do not show that the title involved had passed out of the sovereignty and came from a common source. The challenged pleadings showed that the asserted titles rested upon original grants of the Mexican government, which had been established or validated by a judgment of the Supreme Court of Texas, and that appellees obtained their interest through conveyances from the heirs of the original grantees, likewise the source of appellants' title. Both pleadings and evidence show that all the parties claim under common sources, whose titles were deraigned from the sovereignty. We conclude the court did not err in overruling appellants' general demurrers.

■ Appellants Reyes do not assign error upon the findings of the jury, and for that, if no other, reason those findings are conclusive upon those appellants. Nor do the remaining appellants assign error upon such findings, except in a very general way, concerning only a few of them. But, in any event, we have reached the conclusion that those findings, all of them, are founded upon sufficient evidence to render them conclusive upon this court. The statement of facts and exhibits thereto cover more than a thousand pages of the record. We have carefully examined the evidence set forth in appellants' briefs, have pursued their record references to other evidence, have made independent excursions into the voluminous record, and conclude from such investigation that there is sufficient evidence to support the normal presumptions in favor of those findings. We approve them. But we are not justified in prolonging this opinion by setting out any of that evidence.

Both sets of appellants vigorously assail the judgment establishing appellees' title by limitation. We have already disposed of the matter of pleadings, holding them sufficient to support proof of limitation, at least in the absence of special exceptions. We are further fortified in that holding by the fact that appellees' trial pleadings of limitation were filed after the modification of article 1977, prescribing the requisites of pleadings in suits of this character. Acts 1931, 42d Leg. p. 363, c. 213, § 1 (Vernon's Ann. Civ. St. art. 1977). And we have approved the findings which support appellees' titles by limitation.

Appellees' title to the claimed interest in the Las Comitas rests upon a conveyance thereto from Manuel Bustamante, as attorney in fact for the heirs of Pedro Bustamante. This deed is dated February 11, 1893, and was executed as to appellants Reyes upon authority assumed from a power of attorney executed by Desidora Bustamante on April 12, 1892. It is contended by appellants that under this power the attorney in fact was not authorized to convey the property for the consideration recited in the conveyance. The point made is of doubtful solution, but it need not be decided here, for the reason that the jury found, upon sufficient evidence and without objection from appellants, that Desidora Bustamante, who executed the power of attorney, ratified said deed based thereon. This finding binds appellants, and the point made becomes immaterial.

■ Appellants Bustamante likewise question a similar conveyance from Manuel Bustamante based upon a power of attorney from the remaining Bustamante heirs. The assignment of error raising this question is grouped with 38 other assignments, each raising separate and distinct questions of law and aimed at different rulings of the trial court. This group of assignments is not accompanied by any proposition of law, and rests upon one general combined "statement and/or argument." We are disposed to disregard these 39 assignments, the grouping and briefing of which in this fashion is certainly not authorized by the most recent enactment upon the subject of briefing. Article 1757 (Rev. St.) as amended in chapter 45 of Acts 1931 (Vernon's Ann. Civ. St. art. 1757). With equal certainty it offends all rules of practice and briefing. Appellants invoke the provisions of the amended article as warranting this character of presentation. We do not so construe the act, which provides as follows:

"In all cases appealed to the Court of Civil Appeals and/or taken to the Supreme Court, it shall be sufficient if said briefs contain the following:

"1. A statement as to the nature and result of the suit.

"2. The alleged error or errors upon which the appeal is predicated.

"3. The authorities relied upon.

"4. A statement and/or argument on the errors assigned. Provided, however, that the Supreme Court may adopt rules with reference to the form and time of filing of briefs generally, but not inconsistent with the provisions hereof."

The amendment, like nearly all recent legislative acts to "simplify" and "facilitate" court procedure, is vague, confusing, misleading, is subject to a variety of constructions, and therefore largely defeats its own expressed objects. But we are unable to see anything in its vague scope that would warrant a specific construction which would authorize an appellant to group two or more or 39 or 300 separate and distinct assignments of error and discharge them at an appellate court in one shot over one omnibus "statement and/or argument." If such grouping is permissible, then an appellant may properly present a thousand assignments of error, or "alleged errors," in one paragraph, with only a semicolon to separate each from all the others, and all resting upon one omnibus "statement and/or argument."

A rational analysis discloses that the amendment to article 1757 prescribes the same requisites of a brief that existing rules prescribe, except that it omits specific requirement of "propositions or points" of law, such as are prescribed in the rules. This is plainly disclosed by the following parallel, showing what the rules and amended statute, respectively, provide shall be contained in the brief:

Supreme Court. It would be absurd to say that every litigant may follow his own judgment or caprice in the form or arrangement of the requisites prescribed by the statutes, without reference to or notice of uniform rules prescribed therefor by the power designated by the statute for that purpose.

Such rules are absolutely essential to the orderly disposition of cases referred to appellate courts. The true office of briefs is to lighten the burdens and facilitate the decisions of the courts, by a reasonable and orderly presentation of cases therein, and this object cannot be attained without a uniform system of rational rules for orderly arrangement prescribed by those trained in the use, and cognizant of the necessity of such rules. And such, no doubt, is the reason why the Legislature left that power in the Supreme Court, where it should ever be.

■ We do not mean to hold by these observations that litigants in this court must still assemble all their assignments of error in one group in their brief, or all their propositions of law in another group, or all their authorities alphabetically arranged in still another. We have never enforced those requirements in this court, believing them expensive, cumbersome, futile, and confusing. But we shall enforce the spirit of existing rules which require each contention or assignment, or each group of closely related assignments, to be separately presented in connection with statements from the record appropriate to such assignment or related group.

| Existing Rules | | Article 1757 as Amended | |
|---|---|---|---|
| Rule 29. | "Statement of nature and result of the suit." | § 1. | "Statement of nature and result of the suit." |
| Rule 30. | "Propositions or points upon which the appeal is predicated." | § 2. | "The alleged error or errors upon which the appeal is predicated." |
| Rule 31. | "The authorities relied on." | § 3. | "The authorities relied on." |
| Rule 31. | "Argument or discussion * * * with * * * statement of the record bearing upon the respective propositions." | § 4. | "A statement and/or argument on the errors assigned." |

Now, after prescribing the requisite *contents* of the brief, the statute further provides that the "Supreme Court may adopt rules with reference to the *form* * * * of briefs generally, but not inconsistent with the provisions hereof"; that is to say, the power is still confided in the Supreme Court, and the implied duty still rests upon that tribunal to prescribe appropriate rules for the *form* of briefs, which means the *arrangement* therein of the requisites thereof prescribed by the statute. "Form," when used in the sense here employed, means "orderly arrangement." Words and Phrases, First Series, vol. 3, p. 2910; Webster's New International Dictionary, p. 852 et seq. So, when rationally construed, the statute simply provides that a brief shall be deemed sufficient when it embraces the four requisites therein prescribed, arranged in accordance with the form prescribed by the

■ We will close this digression by expressing the conviction that article 1757, as amended, in no manner lessens the obligation of the litigant to apprise the trial court of the complaints and contentions he expects to urge on appeal. The statutes relating to and requiring motions for new trial below and the preservation of the record thereon are not affected by article 1757, and are still in full force. So also is the requirement that the litigant may make no complaint in this court, other than of fundamental error, that he did not make below, and no position taken below may be asserted here except through a specific designation of error in the complainant's brief, whether such designation be called "assignment" or something else. In short, article 1757 does not excuse the parties from standing in this court upon the same errors assigned below; it does restrict their complaints here to those made below.

142

The trial court not only rendered judgment decreeing title in appellees, but went further and rendered judgment affirmatively decreeing that appellants take nothing by reason of their cross-actions for the recovery of the titles in controversy. Appellants vigorously attack the latter decree. They contend that their cross-actions were filed to be used only in the contingency of a nonsuit by appellees, and that, as appellees did not at any time move for a nonsuit and appellants had taken no affirmative steps to support their cross-action and thereby abandoned it, the court should have dismissed it, without prejudice, and should not have rendered affirmative judgment against appellants thereon. Appellees vigorously resist this position, and the parties are in sharp disagreement concerning the history of this aspect of the case. Appellants contend that it was understood by all parties and the court that the cross-actions were interposed by appellants solely to protect them against nonsuit by appellees, and were to serve no other purpose. Appellees certainly, and the trial judge apparently, disavow such understanding. The controversy seems to be reflected somewhere in the record by unapproved bills of exception, qualifying certificates by the trial judge, and affidavits by counsel as to matters occurring de hors the record, which is otherwise silent in the controversy. Under the circumstances, this court declines to resolve the issue, but will look only to the record made at the time, which shows the cross-actions were duly filed by appellants and remained in the case without record reservations, qualifications, or abandonment, and must be appraised and disposed of at their face value. We conclude that the trial court did not err in rendering judgment thereon upon the merits.

Appellants complain of the court's charge to the jury, and of the giving and refusal of certain special issues. These complaints are presented in groups, one of seven assignments of error under subdivision XV and another of five under subdivision XVI. The gist of these complaints is that the charges omitted some and erroneously propounded other definitions of terms used in the charge and omitted some and erroneously framed certain material issues. It is complained that "peaceful possession," "adverse possession," and "continuous possession," should have been, but were not, defined in the charge. We conclude that, however awkwardly it was done, the two latter phrases were sufficiently defined in the charge, and that the jury were not misled or confused. Of course it is better that such definitions be given to jurors in the precise language of the statute, if given in the statutes. Article 5507 et seq., R. S. 1925. Conformity to the spirit, not the letter, of the legislative definition, is mandatory, and we think that requirement was substantially met in this case, as to adverse and continuous possession. Peaceable possession was shown conclusively, and was not an issue.

So do we conclude that the issue of continuity of use was sufficiently covered in the question: "Do you find from all the evidence that such periods of time as stock were not actually maintained upon the lands were reasonable and consistent with good faith, continuous possession, and use and enjoyment of the lands?"

The case was a very complicated one, requiring the greatest simplicity and brevity in its submission to the jury, consistent with fairness and justice. Submission of all the theories and evidentiary issues urged by appellants would have provoked a travesty upon trial by jury, and we conclude that the case was rationally and reasonably and fairly tried, submitted, and determined.

Accordingly the judgment is affirmed.