## NATIONAL LIFE & ACCIDENT INS. CO. v. CASILLAS.

### No. 9059.

Court of Civil Appeals of Texas. San Antonio.

April 26, 1933.

Rehearing Denied Oct. 11, 1933.

G. Woodson Morris and Martin S. Tudyk, both of San Antonio, for appellant.

William Calvert and Charles J. Lieck. both of San Antonio, for appellee.

SMITH, Justice.

This is an action to recover upon a life and accident insurance policy issued to Alfred Casillas by the National Life & Accident Insurance Company for the benefit of Casillas' sister, Maria. Casillas was killed on May 7, 1931.

The policy sued on was classified as a "month-to-month life and accident" policy as distinguished from the usual life policy. This distinction is made in our statutes which provide that a grace period of thirty days shall be allowed for the payment of premiums upon purely life policies, but relieve life and accident policies from such requirement. Hatton v. Ins. Co. (Tex. Civ. App.) 10 S.W. (2d) 239.

The policy in question provided that the premium (of $1.75) should be "due on the first day of each month, in advance," and that "if any premium is not paid on or before due date, the policy lapses and the insurance is void, until the policy is revived and reinstated." The effect of this provision, and other related provisions, is that if the monthly premium be not paid on or before the due date the policy is thereby automatically suspended from operation until the premium is actually paid, and if during such period of suspense the insured is injured or killed he, in the first instance, or the beneficiary in the second, cannot recover. The provision is common to all such policies, is simple, and has been universally upheld.

Appellee's right of recovery in this case depends upon the fact of whether, or not the premium upon this policy was paid for the month of May, 1931, before the insured lost his life on the 7th day of that month. The jury found that they did "not find from a preponderance of the evidence" that said premium "was not paid prior" to May 7th. Unless the evidence conclusively showed, affirmatively, that said premium was not paid, then the verdict and judgment must stand. We conclude that such showing was made.

The insurer furnished the insured with a "premium receipt book," in which, as each monthly premium was paid, notation thereof was made by the collecting agent, showing the date and amount of the payment, the month for which paid, and the agent's receipt therefor indicated opposite each payment. Such receipt book was kept by the insured in this case and was put in evidence by appellee upon the trial. This book showed payment on September 16, 1930, of the October premium, but no payment in or for

October. It showed payments on November 4 for November; on December 5 for December; on January 8 for January; no payment for February; on March 3 for March; on April 7 for April; none in or for May. No further payments were shown in the book, but appellee introduced a separate receipt from one of appellant's agents for the amount of one month's premium, dated "10-1-30," which was shown to have been applied by appellant in payment of the February premium, not otherwise shown to have been paid. This application was consistent with and supplied a patent omission, from appellee's receipt book, of the receipt for the February premium. The effect, then, of appellee's own proof was to show that no premium was paid for the month of May, on the 7th day of which the insured lost his life. Moreover, appellee herself in effect admitted the failure to pay the May premium by repeatedly tendering the amount thereof to appellant, and into the registry of the court, shortly after the filing of the suit. The fact was finally made conclusive by the records of appellant, which showed no such payment, and by the testimony of two of appellant's agents whose duties embraced such matters, that the May premium was not paid. One of these witnesses, the collector having charge of this account, testified that he called upon the insured for that payment, once on May 1st and again on May 5, but without success, and the insured dying on May 7, the premium was never paid. The ultimate result is, therefore, that the uncontroverted testimony of both appellee and appellant shows, affirmatively and conclusively, that the May premium was not paid, and as the insured lost his life after the policy was thus suspended by nonpayment of premium, and during the period of such suspense, there could be no recovery.

■■Appellee urged a plea of waiver in the court below, but does not seriously urge it on appeal. It was alleged in support of that plea that because appellant repeatedly accepted premiums tendered by the insured after the first day of the month, its due date, it waived the right to defend on the ground that the May payment had not been made at the time the insured lost his life. It is true that appellant did repeatedly accept belated payments. But such acceptance amounted merely to a reinstatement of the policy for the remainder of the month for which each premium was paid, to cover casualties occurring thereafter during that period. Donaldson v. Ins. Co. (Tex. Civ. App.) 53 S.W. (2d) 136; National Life & Accident Ins. Co. v. Reams (Tex. Civ. App.) 197 S. W. 332. The policy belongs to that class known as "month-to-month" policies, which expire at the end of each month, unless renewed by payment of the premium for the ensuing month, subject always to be discontinued at the end of any month at the option of either party to the contract. The insured is under no obligation to pay the monthly renewal premium, and by refraining from such payment may drop the policy at the end of any month. And the insurer is under no obligation (1) to continue the policy in force beyond any current month, and cannot be held to a continuance thereof unless it receives and accepts the premium therefor on or before the due date; or (2) to reinstate the policy after lapse on default unless and until it receives and accepts the premium therefor.

The judgment must be reversed, and as the case seems to have been fully developed into a state of undisputed facts, judgment will be here rendered for appellant, at the cost of appellee.

### On Motion for Rehearing.

We conclude that we were not warranted in holding that the record shows, as a matter of law, that the premium receipt dated "10-1-30" was applied by appellant to the payment due in February, 1931. A careful scrutiny of the record brings grave doubt of the good faith and accuracy of appellant's testimony upon that question. When appellee offered the receipt appellant strenuously objected to its introduction, upon trivial grounds. When it was admitted over those objections, appellant's witnesses sought by shifty and flimsy explanations to discredit the effect of the receipt, and render its application doubtful. It was explained, for instance, that appellant's collecting agents had no consistent system about the method of indicating dates by figures, and that therefore "10-1-30" might mean October 1, or January 10, and yet the witness finally testified that that payment, although "made in October," was applied to the payment of the premium due for February, 1931. Such ambidextrous shuffling apparently so disgusted the jury that they believed none of the testimony of those witnesses, and in consequence found that appellant failed to prove that the May, 1931, premium had not been paid.

This court has heretofore granted appellant's motion to restore to the statement of facts the erased words "in October" following the testimony of appellant's manager that the February premium was paid ("in October"). In her motion for rehearing appellee strenuously renews her objection to that action of this court. We will not revise that ruling, for the particular reason, if no other, that it is immaterial to the decision whether the witness so testified, since the jury refused to believe him, whatever he may have actually testified upon the point.

But this conclusion cannot affect the original disposition of the case. It simply leaves the "10-1-30" payment unappropriated, to be applied by the company upon any unpaid month, of which there were three, October, 1930, and February and May, 1931, according

to the receipt book put in evidence by appellee. Its application to either month would leave the other two unpaid. Had appellee not put the receipt book in evidence, and thereby assumed the laboring oar to show what premiums were in fact paid, she would be in a better position to say appellant has failed to meet the burden resting upon it to affirmatively show nonpayment.

In this case, as well as in nearly all like cases, the defending insurance company had every advantage over the plaintiff in knowing the true facts concerning the timely payment or nonpayment of premiums, and in proving or withholding proof of these facts. The insured is dead and therefore cannot "speak to the transaction" and say when and what payments were made and thereby explain, in a few words, that which is now enveloped in obscurity, largely through the shifty concealments and dodgings of appellant, who actually produced none of its records or books which, presumably, show the true facts.

■ In the original presentation and in her motion for rehearing appellee vigorously attacks the sufficiency of appellant's brief upon the ground that appellant's assignments of error are not brought forward into its brief. There is no merit in this contention. The errors complained of by appellant have been presented in this court through propositions of law, based on specific assignments of error, brought up in the transcript and identified in the propositions by appropriate record references. This is a sufficient presentation in this court.

In its Acts of 1931 (Vernon's Ann. Civ. St. art. 1757), the Legislature undertook to simplify the rules for briefing by amending article 1757, R. S. 1925, to read as follows:

"In all cases appealed to the Court of Civil Appeals and/or taken to the Supreme Court, it shall be sufficient if said briefs contain the following:

"1. A statement as to the nature and result of the suit.

"2. The alleged error or errors upon which the appeal is predicated.

"3. The authorities relied upon.

"4. A statement and/or argument on the errors assigned. Provided, however, that the Supreme Court may adopt rules with reference to the form and time of filing of briefs generally, but not inconsistent with the provisions hereof. (As amended Acts 1931, 42nd Leg., p. 68, ch. 45, § 1.)"

This legislative effort to "simplify" court procedure seems to have been abortive, as usual, however, as evidenced by the resulting confusion and conflict among the decisions construing and applying the amendment. Heatley v. Ponder & Sons (Tex. Civ. App.) 40 S.W.(2d) 951; Security Union Ins. Co. v. Reed (Tex. Civ. App.) 42 S.W.(2d) 494; Lamar-Delta County Levee Imp. Dist. v. Dunn (Tex. Civ. App.) 42 S.W.(2d) 872; Harris v. Harris (Tex. Civ. App.) 44 S.W.(2d) 802; Commercial Standard Ins. Co. v. Noack (Tex. Civ. App.) 45 S.W.(2d) 798; Jennings-Progress Common School Dist. v. Marvin School Dist. (Tex. Civ. App.) 42 S.W.(2d) 805; Brown v. Gas. Co. (Tex. Civ. App.) 42 S.W. (2d) 869; Standard v. Coal Co. (Tex. Civ. App.) 47 S.W.(2d) 443; Johnson v. Huey (Tex. Civ. App.) 52 S.W.(2d) 278; Bustamante v. Haynes (Tex. Civ. App.) 55 S.W.(2d) 137, 141.

When analyzed and liberally construed, as it should be, the amendment substitutes the provision that the brief shall contain "the alleged error or errors upon which the appeal is predicated," in lieu of the provision in the existing rules that the brief shall contain "propositions or points upon which the appeal is predicated." This substitution means nothing, of course, since a statement of the "alleged error" is best presented through a "proposition or point of law."

■ Apparently, the only change actually effected by the amendment is to eliminate from existing rules the futile requirements that an appellant's assignments of error and an alphabetical list of his authorities be grouped in his brief. Those requirements never served any useful purpose, but only incumbered the brief by adding to its bulk and cost. Bustamante v. Haynes, supra.

Certainly the amendment does not affect existing rules and statutes relating to the preservation of objections and exceptions required to be made in trial courts, or, as stated in Bustamante v. Haynes, supra: "Article 1757, as amended, in no manner lessens the obligation of the litigant to apprise the trial court of the complaints and contentions he expects to urge on appeal. The statutes relating to and requiring motions for new trial below and the preservation of the record thereon are not affected by article 1757, and are still in full force. So also is the requirement that the litigant may make no complaint in this court, other than of fundamental error, that he did not make below, and no position taken below may be asserted here except through a specific designation of error in the complainant's brief, whether such designation be called 'assignment' or something else. In short, article 1757 does not excuse the parties from standing in this court upon the same errors assigned below; it does restrict their complaints here to those made below."

We conclude that justice will be better served by a remand than by rendition, and accordingly it is ordered that the judgment be reversed and the cause remanded for another trial, at the cost of appellee.