## LANTRON v. ROBINSON et al.

### No. 4196.

Court of Civil Appeals of Texas. Amarillo. April 2, 1934.

Rehearing Denied April 30, 1934.

Jos. H. Aynesworth, of Borger, for appellant.

Henry D. Meyers, of Borger, and Fischer & Fischer, of Amarillo, for appellees.

JACKSON, Justice.

On May 2, 1933, there was filed with the city of Borger, incorporated as a municipality under the home rule bill, the following instrument:

"To the Honorable Mayor and Commission of the City of Borger, Texas,

Gentlemen: We, the undersigned citizens and qualified voters, being ten per cent (10%) or more of the qualified voters within the said City of Borger, Texas, hereby respectfully request the Honorable City Commission of the City of Borger, Texas, to immediately provide by ordinance for the submission at a special election called for the purpose the question "Shall a commission be chosen to frame a new Charter" as provided in Art. 1165 of the Revised Civil Statutes of the State of Texas, 1925, and at the same time and in the same election, as provided in Art. 1166 of the Revised Civil Statutes of the State of Texas, 1925, provide for an election from the City at large of a Charter Commission of not less than fifteen (15) members nor more than one member for each Three Thousand (3,000) inhabitants."

Signed to this instrument there were 166 names.

On May 13th thereafter a similar instrument with 54 additional names thereon, and on May 16th another similar instrument with 37 additional names thereon, were filed. These instruments were correctly construed and considered as one petition with 257 names affixed thereto. On May 2d the city manager began an investigation to determine the sufficiency of the petition. On May 16th a decision on the petition was requested, but the city commission directed the city manager to ascertain whether the petition was signed by 10 per cent. of the qualified voters of the city and report to the commission at the following regular meeting. On June 6th the commission was again requested to act on the petition, and, after some discussion and the reading of an opinion from their attorneys, the commissioners adopted a resolution, the substance of which is that on June 6th the petition came on for a hearing, and, having heard the evidence as to the legality thereof, the commission was of the opinion that ample time must be taken to make a complete investigation relative to its sufficiency, "inasmuch as the interest of 90% of the people of Borger require that such investigation be made" before the expense of an election shall be incurred; that the city manager proceed with the investigation and within a reasonable time submit a fair and impartial report to the commission as to the sufficiency of the petition; that, owing to the necessity for further investigation and to assist the petitioners without expense to the taxpayers, "the notion is conceived by the City Commission to appoint from the city at large fifteen members to form a committee to investigate the present charter of the City of Borger. Therefore be it resolved by the City Commission of the City of Borger, that the following fifteen taxpayers," naming them, are selected as a committee "to investigate the sufficiency of the present charter and to submit any amendments they deem advisable or to frame a new charter if in their judgment they find the present charter insufficient," and report the result of their investigation to the commission.

On June 12th the appellant, for himself and the other signers to the petition, presented a verified application to the district judge of Hutchinson county for the purpose of obtaining a peremptory writ of mandamus directing the mayor and the commissioners of the city to submit to the voters at a special election the question, "Shall a commission be chosen to frame a new charter?" and to provide for the election at the same time

from the city at large of fifteen citizens as a charter commission, or in the alternative require the commission to act on the petition.

The appellant alleged that there were not exceeding 1,349 qualified voters in the city, and the petition contained more than 10 per cent. thereof, and that the mayor and commissioners had fraudulently, illegally, capriciously, and wantonly refused to order the election as requested in the petition.

The court inspected the application, ordered the petition filed, a copy thereof served upon the members of the commission, and that they be required to answer.

On June 24th the mayor and commissioners answered by general demurrer, special exceptions, denied certain allegations of the application, admitted that the petition was filed, but asserted that upon its face it did not constitute a valid and legal petition signed by 10 per cent. of the qualified voters of the city. That they immediately began an investigation, but had not determined whether the petition was sufficient to require them to order the election as requested. That to determine this would require further investigation. That they had ascertained that the petition contained the names of 67 persons, none of whom were shown by the records of the county to have paid a poll tax for 1933, hence they were not qualified voters. A list of such persons was attached to the answer, marked Exhibit A. That the petition contained the names of 68 persons whose places of residence were not shown, the only address given being the general delivery or a box number in the city, a list of which names was attached and marked Exhibit B. That the names of 18 persons were signed in pencil in violation of the charter. A list of said names was attached and marked Exhibit C. That the petition contained 42 names which the commission believed to be fictitious and not genuine signatures. A list containing such fictitious names was attached marked Exhibit D. On June 29th, by trial amendment, the city alleged that 38 of the persons whose names are signed to the petition had requested in writing that their names be withdrawn. These names are set out in an attached exhibit. That it was their duty to investigate the number of qualified voters, the qualification of the petitioners, their places of residence, and the genuineness of their signatures in order to determine whether the petition contained 10 per cent. of the qualified voters of the city.

They alleged they had endeavored to make a fair and honest investigation, had not acted arbitrarily, capriciously, or fraudulently, had not had a reasonable time to complete the investigation, had not been dilatory, were continuing the investigation, and, after the completion thereof, if they determined the petition was legally sufficient, they would in accordance with their duty grant the request contained therein.

The parties agreed in writing that the case might be decided at the next term of court and judgment rendered, and on July 27, 1933, by decree the court denied the writ and dismissed the case.

Appellant's brief is not in conformity with the law controlling briefing. Bustamante et al. v. Haynes et al. (Tex. Civ. App.) 55 S.W. (2d) 137; Threadgill et ux. v. Fagan (Tex. Civ. App.) 64 S.W. (2d) 405. But, in order that no injustice may be done, and in view of the nature of the litigation, we have investigated the contentions of appellant, notwithstanding the imperfections of the brief.

Section 128 of the charter of Borger provides that the electors may by petition have amendments to the charter submitted to the voters. It is not necessary to pass on the validity of this section, since, in our opinion, it is not material to a disposition of this appeal. However, it contains no requirement that those who sign the petition write their names with ink or an indelible pencil or give the place of their residence.

In this case no election was sought to vote on an amendment, but the petitioners requested that an election be called to submit to the voters, "Shall a commission be chosen to frame a new charter?" and a charter commission be elected. The charter does not provide the procedure for having such an election called as the petitioners requested, but the power and duty of the commission pertaining thereto are found in the statutes.

Article 1165, R. C. S., among other things, provides that: "The governing body of such city may, by two-thirds votes of its members, or upon petition of ten per cent of the qualified voters of said city, shall provide by ordinance for the submission of the question, 'shall a commission be chosen to frame a new charter.'"

Article 1166 provides, in part, that, if such question is submitted, "the ballot containing such question shall bear no party designation, and provision shall be made thereon for the election from the city at large of a charter commission of not less than fifteen members."

It will be observed that these statutes require that "upon petition of ten per cent of the qualified voters of said city" the govern-

ing body shall provide for the submission of the question, and on the ballot shall make provision for the election of a charter commission, but do not require that the signers of the petition give their places of residence or sign their names in person with ink or indelible pencil.

■ Appellant alleged that there were not exceeding 1,349 qualified voters in the city of Borger. This allegation is not traversed by appellees in their answer, except by their general denial.

"In a mandamus proceeding a general denial goes for naught, so that the facts stated in the petition are to be taken as true." May, County Attorney, v. Finley, Comptroller, 91 Tex. 352, 43 S. W. 257, 258. See, also, Miller v. State (Tex. Civ. App.) 53 S.W.(2d) 838.

Assuming the allegation of the number of voters in the city to be true, if 10 per cent. of that number, or 135 qualified voters, signed the petition requesting the election, it was the duty of the city commission to order such election.

■ The court correctly finds that the petition contained the names of 16 persons who were not shown to be qualified voters; that 38 persons whose names appeared upon the petition had requested in writing that their names be withdrawn therefrom; and that two persons whose names appeared upon the petition made affidavit that they had neither signed, nor authorized any one to sign, their names thereto. The finding of the court that the petition contained the names of 42 persons who did not sign the petition and that the evidence was insufficient to show that they authorized the signing of their names to said petition by others is without support in the testimony.

The parties who circulated the petition testified affirmatively and unequivocally that with one exception each of the parties whose name was affixed to the petition either signed in person or that his name was written thereon in his presence and at his request. If the circulators of the petitions are considered interested parties, it would not, under the condition of this record, warrant the finding of the court.

" 'A jury cannot arbitrarily discredit a witness and disregard his testimony in the absence of any equivocation, confusion, or aberration in it. It is not proper to submit uncontradicted testimony to a jury for the sole purpose of giving the jury an opportunity to nullify it by discrediting the witness, when nothing more than mere interest in the case exists upon which to discredit such witness.'

M. H. Thomas & Co. v. Hawthorne (Tex. Civ. App.) 245 S. W. 966, 972. See, also, Golden v. First State Bank of Bomarton (Tex. Civ. App.) 38 S.W.(2d) 628, and authorities cited.

"This case having been submitted to the court without the intervention of a jury, the trial judge in determining the facts, in our opinion, is controlled by the same rules as a jury would be in passing upon the facts, and if a jury cannot arbitrarily discredit a witness and disregard his testimony because of his interest, neither could the trial judge." Western Shoe Co. v. Amarillo Nat. Bank (Tex. Civ. App.) 42 S.W.(2d) 469, 472.

The fact that these 42 parties did not sign the petition with their own hands was not sufficient to disqualify them as petitioners, since, according to the undisputed testimony, the name of each was signed in his presence and at his request.

"The writing of the name of a party to the contract in his presence and at his request, although done by the hand of another, is an adequate signature. The act is deemed to be his as much as if he had done it in person and the person actually writing the name is regarded not as an agent but as a mere instrument or amanuensis" * * * and, "It is sufficient if the signature is written in pencil." 27 C. J. 287, § 356, and authorities cited. See, also, Mondragon et al. v. Mondragon, 113 Tex. 404, 257 S. W. 215; C. J., supra, § 358.

■ Any person whose name was signed by himself or in his presence and with his authority would not be a disqualified petitioner because signed with a lead pencil or because he failed to give his place of residence with the street and number thereof.

■ The petition presented to and considered by the commission, according to this record, had been signed by more than the 10 per cent. of the qualified voters required by the statute, was sufficient, and should have been acted upon by the commission and the election ordered. Hence the court erred in holding that the appellant had failed to show that the petition contained the requisite number of qualified voters.

■ The court finds that at the time of the trial the commissioners had not acted on the petition, had not arbitrarily refused to pass thereon, were in good faith investigating the facts relative to the sufficiency thereof, and that a reasonable time had not elapsed to complete such investigation, and correctly refused to direct by decree that the city commission order the election.

The appellant asked that, if for any reason the court determined that a mandatory writ should not be issued directing that an election be ordered, he prayed in the alternative that a writ issue requiring the commission to immediately consider and act on the petition.

In view of the facts disclosed by this record, the alternative relief sought should have been granted. The trial court is therefore instructed to consider further the application for the writ and enter an order requiring the commissioners to immediately consider and act upon the petition filed for the election.

Reversed and remanded, with instructions.