## Hargrett v. Massachusetts Accident Co.

*H. M. Schell*, for plaintiff.
*J. Bendiner*, for defendant.

LAMBERTON, J., August 16, 1937. — Defendant, on March 4, 1929, issued to plaintiff a policy of accident and health insurance for a term of one year, renewable from year to year, with premium payable semi-annually on March 4th and September 4th. The policy was admittedly in force until September 4, 1936. Plaintiff did not pay the semi-annual instalment of premium then due, but tendered the same subsequently, to wit, on September 14, 1936. Defendant refused to accept said payment and notified plaintiff that the policy had expired on September

4, 1936. On numerous preceding occasions defendant had accepted instalments of premium when overdue, and it is plaintiff's contention that this course of conduct estopped defendant from canceling the policy on account of plaintiff's failure to pay the instalment in question on the exact date when due. Plaintiff asks that defendant be restrained from canceling said policy and ordered to reinstate the same in full force and effect, as of September 4, 1936, upon payment by plaintiff of the premium due September 4, 1936, and any other premiums falling due in the meantime. So far as we are informed, there has been no accident or illness of plaintiff in the meantime. The sole question is whether plaintiff is entitled to have the policy remain in force for his future protection.

The matter was submitted for decision on an agreed stipulation of facts, leaving only questions of law to be decided by the chancellor. In accordance with said stipulation, the court makes the following

### Findings of fact

1. Plaintiff, Felix Hargrett, was the insured under a policy of health and accident insurance, bearing number 619631, issued to the plaintiff by Massachusetts Accident Company, defendant, under date of March 4, 1929. A true and correct copy of said policy is attached to plaintiff's bill of complaint.

2. The policy provides that, upon the named considerations, defendant company insured plaintiff against the specified risks, "for a term of twelve month, beginning on the fourth day of March, 1929, at 12 o'clock noon, Standard Time, . . . against disability as herein defined, resulting from Bodily Injuries through accidental means originating after date of Policy . . . and against Disability by a Disease originating after date of Policy. . . ."

3. Under the terms of the said policy, premiums were payable semi-annually in the sum of $29.39 on March 4th, and $18.72 on September 4th, in each year.

4. The policy provides as follows:

## "PAYMENT OF PREMIUMS

"All premiums hereunder are payable on or before the specified dates, at the Home Office of the Company or to a duly authorized Agent presenting the official receipt signed by the Secretary or Assistant Secretary or Treasurer and countersigned by the Agent designated on such receipt. Premiums hereunder are payable annually in advance or may be paid in regular semi-annual installments at the rates and dates stated on Page 3 of this Policy. The payment of any premium or installment thereon shall not maintain this Policy in force beyond the date when the succeeding premium or installment thereon becomes payable."

5. On page 3 of the policy appears the following:

"ANNUAL PREMIUM $36.00 PAYABLE March 4

"Alternative Mode of Payment is as follows:
"Semi-Annual Installments $18.72 each
"Payable March 4 and Sept. 4"

5½. The semi-annual instalments of premium due on March 4th and September 4th of each year are not in the same amount, as will be noted by reference to paragraph 3 above. The instalment payable on September 4th is $18.72, in accordance with the endorsement on the policy, as quoted in paragraph 5 above, but the instalment payable on March 4th of each year is $29.39. This total is made up of $18.72, as stated above in paragraph 5, $0.62 as an added annual premium in consideration of the waiver of premiums during the disability of plaintiff, as stated in paragraph 12 below, and $10.05, as an added annual premium for hospital indemnity as covered by rider attached to policy.

6. The policy provides:

## "STANDARD PROVISIONS

"3. If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of a premium by the Company or by any of its duly authorized

agents shall reinstate the policy but only to cover accidental injury thereafter sustained and such sickness as may begin more than ten days after the date of such acceptance."

7. Plaintiff contends that the said policy of insurance was noncancelable. Defendant contends that the said policy of insurance was noncancelable upon payment of the premium by plaintiff to defendant on or before the anniversary date. The policy is peculiarly valuable to plaintiff, who could not obtain a similar policy today, except upon payment of a substantially larger premium; and it is doubtful if plaintiff could obtain a similar type of policy today from any reputable company.

8. The policy provides:

## "RENEWAL RIGHT

"The insured shall have the right to continuously renew this policy from year to year upon payment of the premium on or before the anniversary date, until the insured has attained the age of sixty (60) nearest birthday."

9. From the date of the inception of the policy on March 4, 1929, until the premium due September 4, 1932, defendant received payment of premiums due by plaintiff on the following dates:

| Premium due date | Date of payment |
| --- | --- |
| September 4, 1929 | October 5, 1929 |
| March 4, 1930 | March 20, 1930 |
| September 4, 1930 | September 30, 1930 |
| March 4, 1931 | April 9, 1931 |
| September 4, 1931 | September 12, 1931 |
| March 4, 1932 | April 1, 1932 |
| September 4, 1932 | September 10, 1932 |

10. On or about August 15, 1932, plaintiff suffered a total disability, within the meaning of the policy, which continued until April 1, 1934.

11. The policy provides as follows:

"If the Insured suffers a total disability from accidental injury or disease . . . the Company will pay a monthly indemnity at the rate of ONE HUNDRED FIFTY DOLLARS ($150.00) per month during the continuance of such total disability . . . but no indemnity shall be payable for the first 90 days of total disability, as above described."

12. The policy provides:

"If on the date when a premium on said policy is due and payable, the Insured is totally disabled . . .; and has been so totally disabled for at least 90 consecutive days immediately preceding said due date, the Company will waive said premium . . .".

13. During the existence of plaintiff's total disability, from August 15, 1932, to April 1, 1934, defendant expressly waived payment of premium due on March 4, 1933, September 4, 1933, and March 4, 1934.

14. During the existence of plaintiff's disability as aforesaid, defendant paid to plaintiff, by way of disability benefits, hospitalization and waiver of premium, the sum of $3,042.50.

15. After recovery from his disability, plaintiff made payment of premiums due to defendant on the following dates:

| Premium due date | Date of payment |
| --- | --- |
| September 4, 1934 | September 4, 1934 |
| March 4, 1935 | February 14, 1935 |
| September 4, 1935 | August 27, 1935 |
| March 4, 1936 | February 24, 1936 |

16. On or about August 4, 1936, plaintiff received from defendant a "notice of payment due", which notice was identical in form and provisions to the notices theretofore sent by defendant to plaintiff of all premiums which had become due under the said policy. The said notice of August 4th reads as follows:

"Notify the Company on the reverse side, of any Change in your Post-office address.

"NOTICE OF PAYMENT DUE

"MASSACHUSETTS ACCIDENT COMPANY OF BOSTON, MASS.

"If the policy numbered as below is in full force on the date stated, the payment specified will then be due. Payment should be made to the Company or to its duly authorized representative, named hereunder. If such payment is not made by or before the day when due, the policy and all payments thereon will become forfeited and void. There is no grace period.

"GEORGE R. BACON, Treasurer.

"Policy number Prem. Due DATE DUE
"Ind. Prem. 18.72   619631   18.72   4 day of Sept. 1936
"Int.                Felix Hargrett
"Hosp. R.            525 Avenham Av South
"Waiv. R.            Roanoke, Va.

"The payment of this premium on or before the above date will keep policy in force for 6 months from above date.

3-4-29          204          307

"THIS IS NOT A RECEIPT.—Be sure that you receive the official receipt in exchange for your payment. Agents have no authority to make collection hereon which will be binding upon the Company except upon a receipt for the amount specified signed by the Treasurer.

Make Payment to

Massachusetts Accident Co.

87 Kilby St.

Boston, Mass.

"Return this notice with Remittance."

17. The premium due on September 4, 1936, was not paid on that date.

18. On September 14, 1936, plaintiff mailed his check to defendant for $18.72, the amount of the premium due on September 4, 1936.

19. The said check was received, together with the company's notice of payment to become due on September 4, 1936, in an envelope addressed to the home office of defendant company, in Boston, Mass., the said envelope being postmarked "PHILA PA-SEP 15-1936"; and it was returned by defendant to plaintiff on September 18, 1936, with a letter stating that plaintiff's policy had terminated on September 4, 1936, for nonpayment of premium on or before the specified time. A true and correct copy of defendant's letter to plaintiff, dated September 18, 1936, is attached to plaintiff's bill of complaint.

20. Thereafter, on November 2, 1936, plaintiff again made tender of the premium due September 4, 1936, of the sum of $18.72, in cash, to Earl H. Weltz, a "general agent" of defendant company, having offices in Philadelphia, but this tender was refused by the said Earl H. Weltz, who stated that he had no authority to accept the said payment.*

## Discussion

It will be noted that all premium payments in the years 1929, 1930, 1931, and 1932 were made after the due dates thereof and that premiums payable March 4, 1933, September 4, 1933, and March 4, 1934, were waived by the company. Therefore, not until September 4, 1934, five years and six months after the issuance of the policy was any premium instalment ever paid on time. The law undoubtedly is that where a policy of insurance provides for forfeiture in case of nonpayment of premium the insurer

---

* NOTE.—The above findings of fact are identical with the stipulation of the parties, except nos. 4, 5, and 5½. Paragraphs 4 and 5 in the stipulation contain quotations from the same clause in the policy. We have combined these in our paragraph 4 for the sake of convenience in reference, and have added thereto additional words from the same clause, which may be of some importance. Our paragraph 5 is a quotation from the policy not included in the stipulation, and our paragraph 5½ is a summary of some facts appearing in the policy. As the entire policy is embodied in the stipulation by reference, we are not restricted in our consideration to the portions quoted in the stipulation.

may be estopped from rigidly enforcing such forfeiture if it has repeatedly accepted premiums after the due dates. In such case, a payment of premium within a reasonable time after the due date, in accordance with the previous custom, is a valid payment and will prevent forfeiture. Our Supreme Court so held in the case of Helme v. The Philadelphia Life Ins. Co., 61 Pa. 107. The court said:

". . . if they so dealt with her as to induce a belief that the clause of forfeiture would not be insisted on in her case . . . and thus put her off her guard, they ought not to be permitted to take advantage of a default which they may themselves have encouraged."

To the same effect is the Girard Life Ins. Co., Admr., v. Mutual Life Ins. Co. of N. Y., 86 Pa. 236. The case of Cleveland et al. v. Salwen et al., 292 Pa. 427, although it concerns the rights of landlord and tenant, cites Helme v. The Philadelphia Life Ins. Co., supra, with approval, and says:

"Forfeitures are odious in law, and are enforced only where there is the clearest evidence that that was what was meant by the stipulation of the parties."

The entire matter is reviewed at length in the case of Modern Woodmen of America v. Tevis et al., 111 Fed. 113, 117, and the reasons for the rule are therein set forth. The court said:

"Habitual acceptance of premiums by an insurance company after they are due waives payment on the day. Any course of action by a society which leads one liable to a forfeiture honestly and rightfully to believe that by conformity thereto a forfeiture will not be incurred . . . will estop the association from enforcing the forfeiture."

Counsel for defendant agrees that this is the law, but denies that it is applicable to the instant case. He argues that estoppel can arise only by conduct inconsistent with the terms of a policy; that the policy in question was for a definite term and automatically expired at the expiration of that term; that the policy itself provides that it may be reinstated only in case defendant chooses to ac-

cept premiums after the due date; that the course of conduct in this case consisted of semi-annual lapsing of the policy followed by its reinstatement a few days later upon payment of the premium and that, since this was in exact accord with the terms of the policy, there was no course of conduct contrary to the terms of the policy, and, consequently, no estoppel. In short, his contention is that there was no forfeiture in this case, but merely the expiration of the policy in accordance with the terms therein contained.

The law undoubtedly is that when a policy of insurance is for a definite term, with the right of renewal in the insured by payment of a premium on a definite date, the right to renew is lost if payment be not made on the date. In such case, there is no forfeiture, but the policy expires. In the case of Smith v. Massachusetts Accident Co., 143 Misc. 227, 256 N. Y. Supp. 255, appears the following language:

"This insurance was for one year only, with a right to renew the policy from year to year by payment of the premiums on or before the anniversary date of the policy. This was a continuing offer on the part of the defendant so to renew the policy and the time for acceptance of such offer was limited to the anniversary date. The acceptance of payments after the anniversary date can have no effect upon the policy except for the year as to which the premium was accepted because, by its very terms, the life of the policy was one year only. The case is not one of forfeiture but rather of failure to renew": Raynor v. National Cas. Co., 125 Misc. 174, 210 N. Y. Supp. 586.

In such case, if there be a clause in the policy, as there is in the policy in the instant case, providing that acceptance of the renewal premium after the due date shall reinstate the policy, but only as to injuries thereafter incurred, repeated acceptance of renewal premiums after the renewal date does not constitute a course of conduct which will raise an estoppel in subsequent years, for such acceptance is in accordance with and not contrary to the

terms of the policy. This is clearly stated in the case of National Life & Accident Ins. Co. v. Casillas (Court of Civil Appeals of Texas, 1933), 63 S. W. (2d) 396, where there was a month-to-month policy with reinstatement clause similar to that before us, and the court said:

". . . such acceptance amounted merely to a reinstatement of the policy for the remainder of the month for which each premium was paid, to cover casualties occuring thereafter during that period. . . . The insured is under no obligation to pay the monthly renewal premium, and by refraining from such payment may drop the policy at the end of any month. And the insurer is under no obligation (1) to continue the policy in force beyond any current month, and cannot be held to a continuance thereof unless it receives and accepts the premium therefor on or before the due date; or (2) to reinstate the policy after lapse on default unless and until it receives and accepts the premium therefor."

To the same effect is the case of Lindley v. Aetna Life Ins. Co., 209 N. C. 116, 182 S. E. 712, the syllabus of which reads as follows:

"Where renewal premiums were not paid until after insured's accidental death, recovery could not be had on policy on theory of waiver of prompt payment of premiums by past course of dealing where policy provided that when premium payment was defaulted acceptance of subsequent payment should reinstate policy but only to cover injury sustained after such payment."

This policy before us was issued on March 4, 1929, and was for one year, renewable from year to year. The policy expired on March 4th, of each year, and plaintiff's right to renew was lost unless the renewal premium was paid on or before that date. Subsequent reinstatement of the policy was not a right of plaintiff, but was at the option of defendant, evidenced by acceptance of the premium. All this was in accordance with and not contrary to the terms of the policy, and, consequently, repeated acceptance of the March 4th instalment of premium by defend-

ant after the renewal date could not create an estoppel. Defendant would be acting in accordance with the terms of the policy in accepting the premium after the renewal date in one year, and would be acting in accordance with the terms of the policy in refusing to accept it after the renewal date in another year. But this conclusion does not decide the case. We are not considering a failure by plaintiff to pay a renewal premium on March 4th, but a failure to pay an instalment of premium on September 4th, and the facts are not the same in the two cases. We must determine whether what occurred in September 1936 was in reality the expiration of the policy by its own terms upon failure to pay a renewal premium, or the forfeiture of the policy for nonpayment of premium. In the one case, defendant is in the right; in the other case, plaintiff is in the right.

The policy provides:

"The insured shall have the right to continuously renew this policy from year to year upon payment of the premium on or before the anniversary date".

The anniversary date was March 4th. Therefore, the policy is not for six months, with the right of renewal on March 4th and September 4th of each year, but it is for one year, with the right of renewal for an additional year on March 4th of each year. The policy says "Annual premium $36.00, payable March 4", and again, under the heading "Alternative mode of payment", it says "Semi-Annual installments, $18.72 each, payable March 4 and September 4". This does not reduce the term of the policy to six months, but merely divides the payment for a 12-month policy. Therefore, when plaintiff made the payment due March 4, 1936, he thereby exercised his right to renew the policy for one year. True, the policy says:

"The payment of any premium or installment thereon shall not maintain this policy in force beyond the date when the succeeding premium or installment thereon becomes payable".

When we consider that the policy had been renewed for

a term of one year, expiring March 4, 1937, is not the effect of this provision identical with that considered by our Supreme Court in the case of Helme v. The Philadelphia Life Ins. Co., supra, where the policy said:

"In case the said Georgiana Helme shall not pay the said annual, semi-annual or quarterly payments hereinbefore mentioned on or before the several days appointed as aforesaid for the payment of the same, then . . . this policy shall cease and determine"?

We can see no difference, and we believe that case is controlling.

There was, therefore, a policy in effect for the term of one year from March 4, 1936, which, by the terms of the policy, defendant had the right to forfeit for nonpayment of the instalment of premium due September 4, 1936. For the reasons above stated we are not now interested in whether previous renewal premiums due March 4th of each year were made late or were made on time, but we are very much interested in previous September payments. The fact is that four out of six previous September payments were made late and the policy was not forfeited. This constitutes a course of conduct on the part of defendant which estops it from declaring the policy forfeited in September 1936 if the instalment of premium was paid within a reasonable time after the due date. The instalment was tendered September 14th. Previous instalments had been paid as late as October 5th and September 30th without forfeiture. The instalment in question was tendered within a reasonable time in view of the previous custom of the parties, and defendant could not forfeit the policy.

The stipulation states that on August 4, 1936, defendant sent to plaintiff a premium notice stating:

"If such payment is not made by or before the day when due, the policy and all payments thereon will become forfeited and void".

This wording is a little unfortunate in view of defend-

ant's contention that the policy was not forfeited, but expired by its own terms, but it is from another viewpoint that it merits our consideration. There is no question that a party who has consistently waived performance of a condition may notify the other party that there will be no further waiver and thereby prevent an estoppel from arising thereafter. In this case, however, the identical notice had been sent with each previous notice. It merely restated the policy provisions. Defendant's course of conduct therefore estops it from depending rigidly upon the premium notice just as effectively as it estops it from depending rigidly upon the terms of the policy itself.

### Conclusions of law

1. The policy in question was renewable from year to year by payment on the anniversary date, to wit, March 4th, of the instalment of premium named.

2. By paying the sum of $29.39 on March 4, 1936, plaintiff exercised his option to renew the policy for one year, and it thereby was renewed for the year ending March 4, 1937.

3. For the convenience of plaintiff, the annual premium was divided into two parts, payable respectively March 4th and September 4th.

4. Although the policy provided that it would terminate on September 4th if the instalment of premium then due were not paid on that date, such termination in the middle of the extended term was in reality a forfeiture.

5. Defendant, by repeatedly accepting September instalments of premium after the due date, waived its right to insist upon strict compliance with the terms of the policy in regard to such payment, and is estopped from forfeiting the policy for nonpayment of September instalment of premium if the same be paid within a reasonable time after the due date.

6. The tender of the September instalment of premium by plaintiff on September 14th was made within a reasonable time after the due date, in view of the previous

conduct of the parties, and consequently defendant was estopped from forfeiting the policy in September 1936 for nonpayment of premium.

7. Although the premium notice warned plaintiff that the policy would be void if the September 1936 instalment of premium were not paid on time, such notice merely restated the effect of the policy itself, and, since it was identical with notices sent on each previous premium date, defendant is estopped from rigidly enforcing the terms of the notice just as it is estopped from rigidly enforcing the terms of the policy.

8. Plaintiff is entitled to the relief prayed for.*

### Decree nisi

And now, to wit, August 16, 1937, upon consideration of the foregoing case, it is ordered, adjudged and decreed:

1. Defendant, Massachusetts Accident Company, is hereby directed to reinstate in full force and effect, as of September 4, 1936, policy of insurance no. 619631, issued by it to plaintiff, Felix Hargrett, upon payment by plaintiff to defendant, within 15 days of the entry of the final decree in this case, of the instalment of premium due September 4, 1936, and such further premiums and instalments thereof as shall have become due under the terms of said policy up to the date of the entry of such final decree.

2. Defendant shall pay the costs of these proceedings.

The prothonotary is directed to enter this decree nisi and to give notice thereof to the parties or their counsel of record.

---

* NOTE.—In the requests for conclusions of law submitted on behalf of defendant, counsel for defendant apparently considers that the policy is for a term of six months and that there are two anniversary dates in each year, to wit, March 4th and September 4th. Our rulings are to be considered in the light of our decision that the term of the policy is one year and that there is only one anniversary date, to wit, **March 4th.**