LipsooMb, J.
The appellant, Cobb, sued the appellee to recover the value of thirty barrels of whisky.
The following was substantially the evidence before the jury, as collected from the statement of facts.
It was proven by one Jones that in the month of February, 1844, he being about to leave for New Orleans, the plaintiff applied to him to purchase for him thirty barrels of whisky and consign the same to Richard R. Beall, living on Red river, in the county of Fannin; that he, Jones, was indebted to Cobb, the plaintiff, two or three hundred dollars, for which Cobb held his note; that he agreed to buy it and supposed the price of the liquor would be credited on his note to Cobb, and that accordingly, he did buy the whisky and shipped the same to Beall, at his'landing on Red river, in the county of Fannin; that witness is one of the firm of Berthelet, Heald & Co., of Doaks-ville, in the Choctaw nation, and that, as a matter of convenience, he used the name of the firm in the purchase and requested his corarais *(247) sion merchant in the city to mahe the purchase, which was done in the name of Berthelet, Heald & Co., and the bill of. lading consigns the whisky to R. R. Beall, at Beall’s landing on Bed river.
He further proved that when he arrived at the month of the Kea-meclie, the landing for Hoaksville, he informed Mr. Berthelet, one of the firm, that the thirty barrels of whisky on board the boat were bought for Cobb and m ust be sent to Beall up the river. That on his arrival at the depot, where he had a branch store of said firm, he ordered his clerk to charge Cobb with the purchase of the thirty barrels of whisky in New Orleans (.two hundred and fifty-five dollars and nine cents) and to take up his note from Cobb and also to charge him, the witness, as indebted to the firm the amount of the purchase money, which was done by the clerk, and that Cobb gave up to the witness his note as payment for the whisky. It was proven by Jones that in the account of Berthelet, Heald & Co. with Beall, that the whisky in controversy was charged to Beall, but that it ought not to have been charged to him by the firm.
It was in proof by another witness that a few days after Beall had received the whisky, Beall admitted that before Jones left the country for New Orleans, it was agreed between Cobb and Beall that Cobb should, by Jones, purchase thirty barrels of whisky and have it shipped to Beall from New Orleans; that Beall was to receive the whisky, pay the freight and charges for transportation and should keep ten barrels of the whisky as pay for the advance of the freight charges, etc.; that Beall admitted he had received the whisky, but refused to give it up to Cobb when demanded, and said, that on a settlement with Berthelet, one of the firm of Berthelet, Heald & Co., he had paid him the whole of the purchase money and believed he could not get his money back. It was further in proof, by the production of the bill of lading, that the whisky had been consigned by Harrod, Darling & Co. to B. B. Beall or assigns.
The presiding judge charged the jury that Berthelet, Heald & Co., who purchased the whisky in controversy in New Orleans, and appear to be the consignors, had a right to the whisky, and any sale made by them to the defendant was good; and further, that the contract (as stated in the statement of facts) was not binding on Beall, as' there was no earnest money paid, and it was not in writing. To which the plaintiff’s counsel excepted. The jury found a verdict for the defendant. The judge’s charge seems to be objectionable, on the ground that it assumes facts that ought to be left to. the jury. It assumes that Berthelet, Heald & Co. were the purchasers and consignors, and had a right to the whisky, and any sale made by them would *(248) be good. The fact of then* being the purchasers being proven would certainly raise the presumption of owership in them, under a general rule of law; but whether they purchased for themselves or Cobb, although in their own names, might materially change the result, and repel the presumption of ownership.
If they had purchased for Cobb in their own name, they had no right to sell to one who had the notice of that fact. Jones, a member of the firm, testified that he had made the purchase for Cobb, but for more convenience (and as I suppose to avoid multiplying his accounts), caused the purchase to be made by his commission merchant, in the name of the firm. A purchase so made could not give them the right to sell to one who had notice, as before said. The assumption, too, that Berthelet, Ileaid & Co. were the consignors, is not supported by the statement of facts. The bill of lading shows that Harrod, Darling & Co. were the consignors, and Beall the consignee. The consignee had the prima facie right in the articles shipped to him, as the consignment contained no directions showing for whose use they were intended. But these facts should have been left to the jury, and the judge should not have predicated his own assumptions, as the foundation of his charge to the jury of what had been proven. He could only have charged what the law was on such facts being found by the jury. To assume as proven what he believed to be so, and to charge the jury on what he had thus assumed, was well calculated to mislead and to draw the attention of the jury from what had really been proven, and such a course cannot receive the sanction of this court.
There is another point that has been presented for our consideration, arising from the bill of exceptions. The judge charged the jury that the contract between Cobb and Beall was not binding on Beall, because no earnest money was paid and it was not in writing. Some of the earlier English decisions on the doctrine of nudum pactum are hard to be reconciled to the common-sense understanding of mankind. Now to say that when there had been a contract, embracing a large amount of money to be paid or labor .to be performed, that the payment of one pennjr would be a good consideration, and change the legal effect of the contract, looks like a solemn mockery of the end and aim of all jurisprudence; that the payment of a penny would form any part of the consideration worthy of notice seems to be an absurdity to which it would be difficult to assent. The more sensible rule, and the one that seems now to be the correct one is, has there been a real consideration without regard to the antiquated form ©f a nominal as earnest But it is not *(249) that anything should pass at the time, for if there is a real consideration, and that not vicious in law, it will be sufficient. If the contract is mutual, each party undertaking to do something, the mutuality is a good consideration to sustain an action, if the contract is violated. In this case the plaintiff, Cobb, on his part undertook to have purchased and sent to the defendant, Beall, the thirty barrels of whisky, and to give him ten barrels; and Beall undertook to receive it and pay the freight and charges, in consideration of receiving ten barrels in compensation. If Cobb had failed to have sent it, Beall would have had his action. Beall not complying with his part of the contract, Cobb has his right of action. If the whisky sent was received, Cobb’s performance was complete. The ten barrels which Beall -was to receive was not only a valid consideration but it seems that it was a very liberal one, amounting to one-third of the whisky, and worth about double what he had bound himself to pay on its arrival. The contract then was not a nvdum pactum. But even if' it had been, Beall was not at liberty, after having executed it in part by receiving the whisky under the contract, to violate it to the prejudice of Cobb. He admits that he had received it, and attempts to hold on to what he had so received under the contract by contesting Cobb’s right, and setting up a purchase from another, when he must have known that it belonged to Cobb. This is proved by many of the circumstances detailed in the statement of facts, the quantity, the direction from whence it came, and above all, the fact that he had not ordered any himself, prove irresistibly that he knew when he received it that it was the same whisky Cobb had contracted to send him. When he found the whisky charged in the account presented by Berthelet, why did he not make the objection that he had not sent for any of that article, and state the fact that he was to receive that quantity, to be sent to him under his contract with Cobb, and that it was to be procured and sent through the agency of Jones, the co-partner of Berthelet? It is not reasonable to believe that he would have paid for it, without any explanation as to how it happened to be charged to him, if he had been acting fairly and in good faith to Cobb. Berthelet, too, is left by the evidence in not a very creditable position. He had been previously informed by Jones, his partner, that the whisky belonged to Cobb, and that it must be sent up the river to Beall, and he made no objection to it, and the next we hear of the whisky is that it is charged by him to Beall, notwithstanding he knew that it belonged to Cobb. From all of these circumstances the presumption is strong that both Beall and Berthelet knew that Cobb was the real owner, and their conduct is susceptible of no other ex *(250) planation than that they combined to defraud him, and appropriate the speculation offered by the advanced price of whisky to themselves. This may not be the case, but it is nothing more than a fair construction from the facts proven. If innocent, they are unfortunate in having their conduct surrounded by so many circumstances exciting suspicion.
If it was done in fraud of the rights of Cobb, such sale could not impair his right; and further, if there was no fraud, but if Beall knew that it was the whisky that was to be sent to him, under the contract made with Cobb, he was not at liberty to purchase it from any other person; and if he did pay for it, without intending any fraud, he had paid for it in his own wrong and it furnishes no defense against the right of Cobb.
The charge of the judge was contrary to the law, and not supported by the facts of the case. The judgment must be reversed and the cause remanded, and a venire de novo awarded.