HOME INSURANCE COMPANY OF NEW YORK V. LAKE
DALLAS GIN COMPANY ET AL.

No. 6499.   Decided April 29, 1936.
Rehearing overruled June 17, 1936.
(93 S. W., 2d Series, 388.)

480

*Thompson, Knight, Baker & Harris, Will C. Thompson* and
*Sol Goodell,* all of Dallas, for plaintiff in error.

When a fire insurance policy is rendered void by the procurement of additional insurance by the plaintiffs, the insurance company does not waive the violation of the provisions of the policy by agreeing with the assured on the amount of the loss under a non-waiver agreement. Goodwin v. Abilene State Bank, 20 S. W. (2d) 1090; Hines v. Jordan, 228 S. W., 633; Payne v. Beaumont, 245 S. W., 94; 26 C. J., 339.

By entering into a "non-waiver agreement" and "an adjuster's agreement as to value," both of which instruments declare that they do not in any respect waive any of the conditions of the policy, the insurer does not waive the presentation of a formal, sworn proof of loss by the assured within the period of time allowed by law. Commercial Union Assurance Co. v. Preston, 115 Texas, 351, 282 S. W., 563; Scottish Union & Natl. Ins. Co. v. Clancy, 83 Texas, 113, 18 S. W., 439.

*Geo. M. Hopkins,* of Denton, for defendants in error.

On propositions that acts of the agent were binding on the company. Camden Fire Ins. Co. v. Sutherland, 284 S. W., 927; Occidental Fire Ins. Co. v. Fort Worth Grain & Elev. Co., 294 S. W., 953; Southern Mut. Fire Ins. Co. v. Mazoch, 291 S. W., 257; Dalton v. Norwich Union Soc., 213 S. W., 230.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

Defendants in error, Lake Dallas Gin Company and Denton County National Bank, sued Home Insurance Company of New York, plaintiff in error, upon a $3000 fire insurance policy. The trial was with the aid of a jury and resulted in a judgment in favor of the gin company and the bank against the insurance company. The Court of Civil Appeals reversed and remanded the case. 59 S. W. (2d) 305. The case is fully stated in the opinion of the Court of Civil Appeals, but in view of the conclusions we have reached it will not be necessary to make a full statement here with respect to all of the questions there discussed.

The policy sued upon is the Texas standard form and insures the gin company against damage by fire to an amount not exceeding $3000 for one year from August 27, 1930. It is payable to the gin company as owner and to the bank as

mortgagee as its interest may appear. The policy stipulates that unless otherwise provided by agreement endorsed thereon or added thereto, it shall be void if the insured then has or shall thereafter procure any other contract of insurance, whether void or not, on property therein covered.

Plaintiffs, about sixty days after the issuance of the first policy procured another policy payable as the first, covering the same property in the sum of $1800. It was issued by Superior Insurance Company. The agent of the Home Insurance Company, Roy F. Oakley, residing at Lewisville in Denton County, who had procured the first policy upon application made through him, submitted also the application of plaintiffs upon which the second was issued. The first policy, the one sued upon, shows upon its face that it was countersigned at Dallas, "D. D. McLarry, General Agent," and stipulates it "shall not be valid until countersigned by the duly authorized general agent * * * at Dallas." After issuance at Dallas it was mailed to Mr. Oakley at Lewisville, who, after receiving it stamped upon the front thereof, "Roy F. Oakley, Insurance, Lewisville, Texas." The Home Company at the time its policy was issued had been carrying the insurance of the bank for several years. The gin was sold by J. W. Degan to Norman Bayless, and was acquired shortly thereafter by the gin company. During the time Degan owned it a larger coverage was carried by defendant than was provided by the policy in suit.

Chas. Roahner, underwriter for Texas Agency Division, called as a witness for defendant, testified, and it does not appear to be controverted, that cotton gins are included in a sub-standard, or special hazard, class of risks; that the Texas Agency Division, the company's branch office at Dallas for facilitating the handling of this type of business for Texas agents and solicitors, issues all policies on such risks; that it was necessary for all applications for such insurance to the company to be submitted to it by the soliciting agents, and that the policy sued upon was issued in that way.

It is not controverted that when Degan sold the gin a request was made for the transfer of the policy then in force from Degan to Norman Bayless, and that Roahner at that time reduced the policy coverage to $3000. In August, 1930, a renewal application was sent to the Dallas Agency by Oakley requesting renewal of a policy for $3500 then covering the gin property, addressed to D. D. McLarry, general agent at Dallas, which, together with Oakley's certificate, reads in part:

"Please renew Policy No. 9185, issued by your Lewisville,

Texas Agency for $3500 on Gin * * * situated at Lake Dallas in the County of Denton, State of Texas; and I hereby agree that my application now on file with you is continued as a warranty and forms the basis of the new insurance and a part of the new Policy, and I further warrant that no changes have occurred in the risk which would affect the said applica-tion, except: I now owe $8000. Due Nov. 1, 1930. * * *

> (Signed)  *Lake Dallas Gin Co.*
> Norman Bayless, Assured.

"This is to certify that I inspected the above plant on 8-17-30 and find that conditions are the same as heretofore reported to you. THE RISK IS RECOMMENDED BY ME.

> *Roy F. Oakley, Agent.*

*Agency Lewisville, Texas."*

It should be noted that while the application was for coverage in the sum of $3500, it was not allowed in that amount; and that the policy issued thereupon was for $3000.

The following is quoted from Mr. Roahner's testimony:

"Q  What is your connection with him (D. D. McLarry)?

A  I am in the underwriting department of his office.

Q  Mr. Roy F. Oakley has been agent for your company for 10 or 12 years, hasn't he?

A  Yes, sir.

Q  And Roy F. Oakley writes insurance for lots of buildings in Lewisville and institutions in Lewisville * * *?

A  Yes, sir.

Q  Garages, banks, grocery stores, dry goods stores and such like * * * and restaurants?

A  Yes, sir.  He don't write insurance on automobiles; he don't write any on gins and he don't write any on farm property."

The following is quoted from the testimony of Mr. Oakley, who was called as witness on behalf of plaintiffs:

"Q  You are agent for the Home and had authority to issue policies, did you?

A  Yes, sir.

Q  Did you carry insurance on the Lake Dallas Gin Company, any part of it for the Home Insurance Company?

A  Yes, sir.

Q  How long has the Home been carrying that insurance?

A  I imagine about 8 or 10 years.

* * * * * * *

Q  You procured the application for this last renewal did you, and sent it in?

A  Yes, sir.

*  *  *  *  *  *  *

Q  You took application for additional insurance, the $1800 policy that was finally written by the Superior, did you?

A  Yes, sir."

The Superior Fire Insurance Company policy was for the term of one year from October 17, 1930, and was payable to the gin company, and to the bank as its interest might appear, and was signed at San Antonio, October 21, 1930.  No agreement of the Home Company for additional insurance was endorsed upon the policy sued upon, and it contends none was made for it by any one having authority to bind it upon such agreement.

The fire occurred about 10:30 p. m. the night of October 21, 1930.

Mr. Oakley's testimony in this connection reads:

"Q  When did you learn of the fire with reference to the time you received this policy?

A  I had the policy in my hand when I heard about it.

Q  Just opening your mail?

A  No, I think I had been in the bank and charged it up to them.

*  *  *  *  *  *  *

Q  Had you notified the Dallas office or Home Insurance Company of the additional insurance?

A  No, sir.

Q  Why hadn't you?

A  I held up to find out if the other company would take the increase on it.

Q  But the policy had reached you that day, hadn't it, the morning after the fire?

A  Yes, sir.

Q  If I understand about this policy in suit here, this policy was issued there in the Dallas office as a result of written application that went down to them?

A  Yes, sir.

Q  It came back up to you signed at the bottom and you took it and stamped your name on the outside of it and gave it either to the Denton County National Bank or Mr. Bayless?

A  I think I gave it to Mr. Bayless.

Q  You gave it to him for the Denton County National Bank?

A   Yes, sir.

* * * * * * *

Q   When you talk about issuing the policy down there the policies you issue are on dwelling houses and mercantile risks, aren't they?

A   Yes, sir.

Q   You don't issue them on gins. They are issued there in the Dallas office pursuant to written application you make?

A   Yes, sir.

Q   That written application is by the fellow who wants the insurance and you send it down there to see whether they will issue it or wont's issue it?

A   Yes, sir.

Q   And that is the way this one was handled?

A   Yes, sir."

Mr. Bayless testified by deposition, and it is not controverted, that he was president of the gin company from August 8, 1929, to October 21, 1930, and after issuance of the policy by the Home Insurance Company he signed another application for $1500; that about three weeks before the fire J. W. Degan, president of the bank, came to his place of business and suggested they put about $1500 more insurance on the gin plant, and that he replied: "We have all the insurance they will give us"; that about three days later Degan's son-in-law, Roy Oakley of Lewisville, came by with an application for insurance for $1500; that he signed the application for that amount, and that about three weeks thereafter, about October 18, Mr. Degan came by and stated the application went through for $1800 additional insurance; that he replied he had signed the application for $1500, and that Degan replied: "The additional amount won't hurt." He further testified that Oakley took both applications and that both policies were delivered to the bank, and that the account of the gin company was charged with the premiums on both policies at the bank.

It is not denied by defendant that Oakley was an agent of the company with limited authority, and that as such he procured the policy in suit. He sent in the application to the Dallas Agency, collected the premium, retained his commission, delivered the policy, and reported the loss when the fire occurred; but the testimony is undisputed that he had no authority to issue policies covering gins, or that such risks had to be approved and issued by the general agency at Dallas. No witness testified Oakley had such authority, and no representative of either plaintiff testified that he believed Oakley

had such authority, or that plaintiffs relied upon such authority. In fact, the coverage was reduced by the Dallas agency when the gin changed hands, and Oakley's recommendation for a $3500 coverage carried in an application signed by the gin company, was rejected by defendant about two months prior to the issuance of the second policy. Oakley had not been authorized by defendant to write policies on gins and had never done so. It appears from the policy itself that it was not issued by Oakley. It was countersigned at Dallas "D. D. McLarry, General Agent," and provides it "shall not be valid until duly countersigned by the duly authorized General Agent of this company at Dallas, Texas." In the light of the apparent and undisputed limitation upon his authority as an agent of the defendant, the jury's findings that he was a general agent is meaningless.

■ Contractural provisions with respect to additional insurance are as important as the original promise to insure; and the requirement in the policy contract of consent to other insurance is held not to be arbitrary, but reasonable and proper. New Orleans Insurance Association v. Griffin, 66 Texas, 232, 18 S. W., 505. The provisions are strictly enforced. Aetna Ins. Co. v. Waco Co. (Com. App.), 222 S. W., 217; Providence-Washington Ins. Co. v. Levy & Rosen (Com. App.), 222 S. W., 216; Boatner v. Providence-Washington Ins. Co. (Com. App.), 241 S. W., 136.

■ Plaintiffs' contentions that defendant waived the provision in question and became estopped to enforce it because of Oakley's knowledge of the increased coverage, would be good if at the time he procured the second policy he had been authorized to bind the defendant upon such increase without the necessity of sending in the gin company's application therefor, and without approval by the general agency which issued the policy sued upon. In Morrison v. The Insurance Company of North America, 69 Texas, 353, 6 S. W., 605, relied upon by plaintiffs, the agent had such authority, but merely had not made actual endorsement of the agreement on the policy at the time of the fire. The agent there acted within the scope of his authority, and notice to him was notice to his principal under well established principles governing the law of agency. It appeared from the policy itself in the present case that it was not valid unless countersigned by the general agency at Dallas, and plaintiffs were charged by this and other undisputed facts of the limitations upon Oakley's authority. Aetna

Insurance Co. v. Holcomb, 89 Texas, 404, 34 S. W., 915; Liverpool & London & Globe Ins. Co. v. Cabler, 271 S. W., 441; East Texas Fire Ins. Co. v. Blum, 76 Texas, 653, 13 S. W., 572; Westchester Fire Ins. Co. v. Wagner, 10 Texas Civ. App., 398, 30 S. W., 959. In the case last cited the court says:

"No principle is better settled in the law, nor is there any founded upon more obvious justice, than that if a person dealing with an agent knows that he is acting under a circumscribed and limited authority, and that his act is outside of and transcends the authority conferred, the principal is not bound; and it is immaterial whether the agent is a general or a special one, because a principal may limit the authority of the one as well as that of the other."

■ Regardless of whether plaintiffs signed the applications in question without reading same, or had read the policy contract sued upon and actually knew what it stipulated, they were bound by its terms. Fitzmaurice v. Mutual Life Ins. Co., 84 Texas, 61, 19 S. W., 30; Texas State Mutual Fire Ins. Co. v. Richbourg (Com. App.), 257 S. W., 1089; Home Ins. Co. v. Boatner, 218 S. W., 1097 (Com. App.), 239 S. W., 928; National Union Fire Ins. Co. v. Dorroh, 63 Texas Civ. App., 620, 133 S. W., 475 (writ ref.). There is no question of apparent authority in the case. Oakley's recommendation for a policy for $3500 had been rejected by defendant about sixty days before the second policy was procured. Plaintiffs knew defendant had reduced the coverage to $3000 when the gin changed hands, and were otherwise charged with knowledge of the limitation upon Oakley's authority.

■ Plaintiffs earnestly insist that defendant is estopped to enforce the stipulation against additional insurance under the holding stated in Law v. Texas State Mut. Fire Ins. Co. (Com. App.), 12 S. W. (2d) 539. It is not the law that the soliciting agent's knowledge, without more, of the procuring of a second policy covering his principal's original risk, he having no authority, and no apparent authority, to issue the coverage in question, can be made the basis of either waiver or estoppel against his principal which has no such knowledge. Such knowledge on the part of the agent, without more, cannot supply his lack of authority, and should not be given that effect. Such would be the case if plaintiff's interpretation of the holding in the Law case is correct. It is unnecessary to discuss the case further, other than to say that if the holding there

made is in conflict with the governing principles herein stated, it is overruled.

■ Defendant having made no agreement for additional insurance its policy became void by its own stipulations. Being unenforceable the trial court should have granted defendant's motion for an instructed verdict, unless the action of its adjuster in investigating and determining the amount of the loss was a waiver of the violation of the additional insurance clause of the policy.

■ The policy provides that the company "shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act or proceeding on its part relating to the appraisal or to any examination herein provided for * * *."

On November 3, 1930, following the fire on October 31, 1930, defendant and plaintiff gin company entered into a non-waiver agreement to the effect that the action taken by the representative of either party should not be construed as a waiver of any of the rights of either; and that the acts of defendant in endeavoring to ascertain the amount of the loss by appraisement or otherwise, should not be considered a waiver of any of the conditions of the policy, but should be considered as for the benefit of all concerned. On the back of the non-waiver agreement there was an executed adjuster's agreement as to value bearing the same date as the non-waiver agreement, stipulating the amount at which the loss was fixed. It recites that the sum fixed is binding upon the parties as to the amount of the loss only and "does not in any respect waive any of the conditions of the policy."

The Court of Civil Appeals held that defendant could not invoke the non-waiver agreement to preclude plaintiffs' claim of waiver based on the parties having agreed to the amount of the loss, on the ground that the agreement was without consideration in that defendant was already obligated to investigate and determine the amount of the loss when the waiver agreement was executed.

The holding of the Court of Civil Appeals is untenable in the light of the holding here made that defendant was not estopped to refuse payment under the policy contract on account of its breach by plaintiffs. As it now appears defendant was not at the time the non-waiver agreement was executed, obligated to do anything with respect to the policy. Defendant at that time in view of the claim made under the policy by the

gin company and the gin company in view of defendant's question as to liability, neither knowing with certainty the outcome, merely agreed to attempt to settle as many issues as possible by investigation of the facts. The mutuality of the promises set out in the agreement, together with the fact that under its terms one party or the other, or both, would be benefited or injured thereby, prevented its being a nudum pactum. Cobb. v. Beall, 1 Texas, 342; Bason v. Hughart, 2 Texas, 476; Tex. Jur., Vol. 10, p. 129, sec. 75.

It may be added that it is settled in this state that the breach of a policy provision such as is here involved is not waived by an agreement between the insured and an adjuster of the insurer as to the amount of loss. White v. National-Ben Franklin Ins. Co., 1 S. W. (2d) 1117 (writ ref.); Roberts, Willis & Taylor Co. v. Sun Mut. Ins. Co., 19 Texas Civ. App., 338, 48 S. W., 559 (writ ref.); Labell v. Georgia Home Ins. Co., 28 S. W., 133; 26 C. J., p. 338, sec. 428. See also American Central Ins. Co. v. Nunn, 98 Texas, 195, 82 S. W., 497, 63 L. R. A., 83.

■ Article 4931, R. S. 1925, providing in effect that a fire insurance contract shall not be invalidated by any act or neglect of the mortgagor or owner of the property, is invoked by the mortgagee bank. It is without application in this case as the additional insurance was applied for at the instance of the bank. See Georgie Home Ins. Co. v. Golden (Com. App.), 91 S. W. (2d) 695, in this connection. Oakley in making the application to the Superior Company for the second policy was acting for plaintiffs and that company, and not for defendant. East Texas Fire Ins. Co. v. Blum, supra.

For reasons already stated the judgments of the trial court and Court of Civil Appeals are reversed and judgment is here rendered for plaintiffs in error, Home Insurance Company.

Opinion adopted by the Supreme Court April 29, 1936.

Rehearing overruled June 17, 1936.