### TEXAS PRUDENTIAL INS. CO. v. HOWELL.

#### No. 12432.

Court of Civil Appeals of Texas. Dallas.

July 2, 1938.

Rehearing Denied Sept. 24, 1938.

Thompson, Knight, Baker, Harris & Wright and James E. Henderson, all of Dallas, for plaintiff in error.

Harvey C. Ford, of Dallas, for defendant in error.

YOUNG, Justice.

Appellee, as plaintiff below, brought this suit against appellant company, upon a life policy of insurance for $248, statutory penalty and attorney's fee, her husband C. O. Howell being the assured. Defendant urged general demurrer and denial to such petition, and also plead certain material misrepresentations in the application upon which the policy issued without medical examination, this defense passing out of the case by reason of the application not being attached to the policy. Defendant also alleged a provision in the policy that same should be void and of no effect if, upon date of delivery and acceptance, the assured be not in perfect health and free from injury and infirmities; further alleging that Howell was not in good health but was suffering from cancer on date of application (November

5, 1934) and on date of delivery of the policy (November 12, 1934), and consequent breach of the good health provision above noted, praying for cancellation, etc. By supplemental petition plaintiff plead waiver and estoppel, claiming that about December 23, 1934, within about six weeks after the policy date, the assured (Howell) was operated upon at a Dallas hospital and the presence of cancer and gall bladder obstructions were disclosed; alleging that plaintiff thereafter told defendant company, acting by and through its agents, M. W. Gray and P. B. Fencher, all about the cancer, together with the medical information that such cancerous condition had existed for several months prior to the operation; and that, notwithstanding this information, defendant, through its said agents Gray and Fencher, continued to collect the premiums upon the policy, thereby waiving the terms and provisions therein as to good health on the date of its issuance. Defendant's answer to plaintiff's above claim of waiver and estoppel denied the authority of said M. W. Gray to waive any of the forfeiture provisions of the policy, and that Gray was only empowered to solicit insurance, fill in applications, deliver such policies as he had solicited, and collect premiums thereon; the said limitations upon the powers of such agent being specifically set forth in the instrument sued upon; wherefore, as defendant alleges, it was not estopped to assert its said defenses and had not waived the same by reason of the knowledge of, or notice to, the said M. W. Gray.

Upon a trial the facts found by the jury, in substance, were that, (1) M. W. Gray learned after the delivery of the policy that Charles O. Howell was not in sound health on the date of delivery thereof; (2) defendant Insurance Company waived the provisions in the policy in question, which required the assured at the time of delivery to be in perfect health, by accepting premiums thereon up to the time of assured's death, which occurred about September 9, 1935; (3) that the assured, Howell, did not have knowledge that he was in bad health at the time of the application, or that he was then suffering from cancer or gall bladder obstructions; and (4) that no conspiracy existed between said Howell and agent Gray, by remitting and collecting premiums after both had later acquired the above mentioned knowledge of assured's bad health at the time

the policy was delivered. Defendant has here appealed from a judgment below for plaintiff upon all jury findings.

It was stipulated by the parties on the trial below that, "Upon the date of the filling in of the said application, and upon the date of the delivery of the said policy, the assured, Charles O. Howell, was not in perfect health or free from infirmities, but that said assured, on each of said dates, was suffering from cancer". It further appeared from the evidence that the only representative of the defendant company who had been advised of the doctor's statement concerning the duration of assured's cancer prior to the operation on December 23, 1934, was the agent M. W. Gray; plaintiff admitting that she had not told Mr. Fencher anything about how long her husband had been suffering therefrom. Gray testified that Mrs. Howell told him of her husband's condition, but that he did not know whether he told Mr. Fencher of such fact or not; and the testimony of the agent Fencher was positive that M. W. Gray had never mentioned such bodily ailment to him, and that he had no knowledge of Howell's existing ill health of November 1934 until subsequent to assured's death. As the evidence negatives any issue of imputed knowledge to P. B. Fencher of any information as to the ill health of Mr. Howell at the material dates in the record, there remains before us for determination the single question of whether, under the circumstances, plaintiff's statement to M. W. Gray, that the duration of her husband's cancer had probably antedated for several months the operation of December 23, 1934 constituted notice of such infirmity, so that the collection of premiums thereafter waived the good-health provision of the policy and estopped the defendant from interposing such defense. A clause in the policy reads: "This policy is void and of no effect, and all premiums paid shall be forfeited to the Company in the event of any of the following, to-wit: (1) If the insured dies before the date hereof, or before the date of actual delivery to and acceptance by the insured of this policy * * *; or if on said date of delivery and acceptance, the insured be not in perfect health and free from injury or infirmities * * *". Another material provision is: "This policy and application is entire agreement between the company, the insured, and the holder and owner thereof, and is incontestable after two

years from date of issue except for non-payment of premium. Its terms cannot be changed or its conditions varied, except by a written agreement signed by the President, a Vice-President or a Secretary of the Company. Therefore, Agents (which term includes Inspectors, Superintendents, Assistant Superintendents and Cashiers), are not authorized to make, alter or discharge contracts, or waive forfeitures".

■ It is not disputed that the authority of M. W. Gray, in behalf of the defendant, was that of a soliciting agent only and confined to securing and filling in applications for insurance, forwarding same to the company, and upon approval thereof delivering policies, and later collecting premiums thereon; that he had no authority to waive any provision of the written contract. Even the health of a risk prior to acceptance of any application was subject to the inspection of another agent, Mr. Fencher. It was also unquestioned that the plaintiff and the assured had the policy in possession at all material times following its delivery to them, and regardless of a reading thereof they were bound by its terms. Fitzmaurice v. Mutual Life Ins. Co., 84 Tex. 61, 19 S.W. 301; Texas State Mut. Life Ins. Co. v. Richbourg, Tex. Com.App., 257 S.W. 1089; Home Ins. Co. of New York v. Lake Dallas Gin Co., 127 Tex. 479, 93 S.W.2d 388, 391.

■ It is the general rule that, in testing the binding effect of a waiver on the subsequent acts of the agent, the courts determine whether such acts of waiver were within the apparent scope of the agent's authority. The restrictions on the powers of the soliciting agent (Gray) being plainly stated in the policy sued on that, "Its terms cannot be changed or its condition varied except by a written agreement signed by the President, a Vice-President or a Secretary of the Company", our decisions are uniform that the acts of such agent, in continuing to collect the premiums after his knowledge of the infirmity of the assured on the policy date, did not effect a waiver of the good-health provision of such instrument. We quote from Southern Surety Co. v. Benton, Tex. Com.App., 280 S.W. 551, 553: "In executing such application as he did, Benton had notice that Harris had no authority to bind the company by a waiver of any stipulation contained in such application or the policy of which it forms a part.

Sovereign Camp, W. O. W., (Tex.Civ. App.), 174 S.W. 619, and authorities cited therein. In these circumstances, the knowledge of Harris of the unsound physical condition of Benton, if he, in fact, had such knowledge, cannot be imputed to the plaintiff in error for the purpose either of working an estoppel—and thereby prevent the latter from asserting a defense based on said stipulation relative to Benton's good health, etc., at the time of the delivery of the policy —or of establishing a waiver of such stipulation by the plaintiff in error". Nor do we think the instant facts are sufficient to create an estoppel. The elements of this latter defense, in contrast with waiver, in insurance law, are stated in Vance on Insurance, 2d Ed. sec. 138, page 518, as follows: "Any words or acts of an insurer who is aware of the existence of a breach of condition or other ground of defense in his policy previously or presently delivered, which are reasonably interpreted by the person insured as representing that the contract is valid and enforceable will estop the insurer from setting up such defense in an action on the policy by the insured, provided: (1) That the insured was himself ignorant of the existence of such defect in the policy, and (2) has in good faith acted to his prejudice in reliance upon such representation".

Here, neither the assured nor plaintiff (the beneficiary) could claim ignorance of defects in the policy in question, as they were both charged with knowledge that its terms required perfect health and freedom from infirmities on its effective date. Also, from the medical operation of December 23rd, they knew the unfortunate bodily condition of Mr. Howell was in existence at the time the instrument was delivered. No pleadings or facts are presented to show prejudice to the insured, by continuing to collect premiums, save as to the amount thereof—$9—which defendant has tendered with legal interest.

■ Plaintiff contends, however, that the knowledge of the soliciting agent Gray, of a lack of health on the part of the assured on the policy date, subsequently obtained in the course of his employment and in the conduct of his principal's business, is imputed to the Insurance Company, and, in effect, works an estoppel. Of course, such defense is contingent upon actual or constructive knowledge by the Insurance Company, of facts

as they actually existed; and the plaintiff does not contend that the knowledge by Gray, the soliciting agent, was actually imparted to his principal by him.

It must be kept in mind that the matters as to which the plaintiff seeks to impute knowledge, relate not to information gained by the soliciting agent at the inception of the contract, but afterward, and when his duties in fact were solely the collection of weekly premiums. At no time did his duties extend to matters concerning the physical condition of the assured. In such a case it seems from the decisions that knowledge of an agent, whose powers are so restricted, is not imputable to the insurer. 24 Tex.Jur. sec. 112, page 818; 2 Tex.Jur. (Agency) sec. 162, page 570. Here, plaintiffs' contention of estoppel might be good, were it not for the known lack of authority of the soliciting agent, who actually had the information of ill health. Westchester Fire Ins. Co. v. Wagner, 10 Tex.Civ.App. 398, 30 S.W. 959 (cited in the Lake Dallas Gin Case), well illustrates the law principle which we are endeavoring to emphasize. The court there said [page 961]: "There is nothing whatever that tends to show that appellant had the least intimation, previous to the time when it was made known to the adjuster after the fire, that the ownership of the property was other than that expressed in the policy. Notice to the agent, with circumscribed special authority, was not notice on matters about which it was provided that he should not have the power of waiver, and in regard to such matters, to raise an estoppel against the principal, it would be necessary to prove that he had been actually notified of the act of waiver on the part of the agent, and had in some manner indorsed or ratified it". We think the statements just made and quoted differentiate the instant case generally from the authorities upon which plaintiff relies.

In Home Ins. Co. v. Lake Dallas Gin Co., supra, Judge Taylor, in an opinion adopted by the Supreme Court, says: "Plaintiffs earnestly insist that defendant is estopped to enforce the stipulation against additional insurance under the holding stated in Law v. Texas State Mutual Fire Ins. Co. (Tex.Com.App.) 12 S. W.(2d) 539. It is not the law that the soliciting agent's knowledge, without more, of the procuring of a second policy covering his principal's original risk, he having no authority, and no apparent authority, to issue the coverage in question, can be made the basis of either waiver or estoppel against his principal which has no such knowledge. Such knowledge on the part of the agent, without more, cannot supply his lack of authority, and should not be given that effect. Such would be the case if plaintiff's interpretation of the holding in the Law Case is correct. It is unnecessary to discuss the case further, other than to say that if the holding there made is in conflict with the governing principles herein stated, it is overruled".

The decisions apparently contra to the rule just stated by Judge Taylor are really not so in fact upon careful reading. For instance, in American Nat. Ins. Co. v. Bailey, Tex.Civ.App., 3 S.W.2d 539, the knowledge of the soliciting agent, Bridges, was obtained while filling out the application, and a part of his duties was to investigate the health of the assured; and similar to the Bailey Case is American Nat. Ins. Co. v. Wiggins, Tex.Civ.App., 4 S.W.2d 595. National Life & Acc. Ins. Co. v. Harris, Tex.Civ.App., 78 S.W.2d 1041, involved facts of clear estoppel, by the company accepting current dues from the policy-holder, with knowledge that arrears of dues existed as unpaid; and Law v. Texas State Mut. Fire Ins. Co., Tex.Com. App., 12 S.W.2d 539, as regards the principle applied here, has been overruled.

We sustain appellant's assignments and proposition thereunder, with the result that the judgment of the trial court must be reversed and here rendered as prayed.

Reversed and rendered.