**COMMONWEALTH LIFE & ACCIDENT INS. CO. v. NELLIGAN.**

No. 12081.

Court of Civil Appeals of Texas. Galveston.

March 31, 1949.

Rehearing Denied May 12, 1949.

Vance & Wagner and A. Milton Vance, all of Houston, for appellant.

J. W. Mercer, of Houston, for appellee.

GRAVES, Justice.

This appeal is from a judgment of the 113th District Court of Harris County, sitting without a jury, awarding the appellee a $912.68 recovery against appellant, as being the net sum due from it to him under the terms of a health and accident insurance policy the company had issued to him as one of its agents, which the trial court found was to become effective on June 1, 1947, after the court had balanced the accounts between the parties, growing out of the business done between them during the existence of their relation as an insurance company and sales agent therefor respectively.

The appellee filed the suit, declaring upon the policy, not, however, attaching a copy thereof to his petition, claiming that indemnities under the terms of the policy had inured to his benefit because of an accidental injury sustained by himself on the 29th day of November, 1947, in the total amount of $900 indemnity, further seeking 12% penalty and reasonable attorney fees, etc. No further details as to such features need be given, since the appellant makes this concession concerning them: "The policy was issued June 1, 1947, by Appellant, Commonwealth Life and Accident Insurance Company, a Missouri corporation, to Appellee, George J. Nelligan, an experienced Insurance Agent, then in Appellant's employ at Houston, Texas, working out of its Houston office under the supervision of Herman Bender, Appellant's local manager. The policy was a Health and Accident policy, and on November 29, 1947, Appellee sustained disability due to accidental personal injuries, which entitled him to recover upon it the sum of $900.00, together with 12 per cent penalty, and attorneys fees, as adjudged by the Trial Court herein provided the policy

was in force at the time of the injury sustained by Appellee."

But appellant insists that the undisputed evidence showed the policy was not in force at the time of appellee's injury; that it had lapsed for non-payment of the premiums due by him thereon for the months of both October 1, and November 1, 1947, because of which the policy became so defunct, pursuant to its express terms on October 6, 1947, which was the last day of grace upon the premium due October 1, 1947.

In challenging the court's judgment so adverse to it, appellant's main points of error may be thus condensed: "In the face of policy-provisions prohibiting waiver or receipt of premiums on policies in arrears more than five (5) days by Appellant's agents, the Trial Court erred, first, in admitting evidence, over Appellant's objection, designed to show a waiver of said provisions by the Cashier at Appellant's Houston office; particularly when the undisputed evidence showed that she had no authority to waive the policy provisions; second, in rendering judgment for Appellee, based upon a finding of a waiver of such policy-provisions providing for lapsation for non-payment of premiums by the act of Appellant's Cashier, there being no evidence to show the Cashier's authority to bind Appellant to the alleged waiver; third, in his Conclusion of Law No. 1, that the statement of Appellant's Cashier to Appellee that the premium was taken care of, and that Appellee could pay her later, amounted to a waiver of the policy-provisions with respect to time for payment of premiums; because, said statements, even if binding upon Appellant, did not amount to a waiver, since the policy, by its terms, was not in force at the time, and payment of premiums, when made by Appellee, would have operated only to put the policy in force from the date of actual receipt of such payment, and then only if satisfactory proof of insurability was furnished by Appellee."

The trial court filed findings of fact and conclusions of law in support of its judgment, which in brief summary as to the features deemed most material, were as follows:

"II. The premiums on said policy were provided to be $2.00 per month, and the date for payment of premiums was the 1st day of each consecutive calendar month, beginning June 1, 1947.

"III. The first premium payable on said policy was paid in cash by plaintiff. Thereafter, by arrangement between plaintiff and defendant, the premium receipt-book was placed with the Cashier of Defendant in its Houston, Texas, office, and it was agreed that the premiums, as they accrued, should be paid by book credit representing deductions from plaintiff's commissions in his capacity as an insurance agent in the employ of defendant. Premium maturing July 1, 1947, was paid by deduction from plaintiff's commissions accruing for the week beginning June 30, 1947. The premium maturing August 1, 1947, was paid by deduction from plaintiff's commissions accruing for the week beginning July 28, 1947. The premium maturing September 1, 1947, was paid by deduction from plaintiff's commissions accruing for the week beginning September 1, 1947.

"IV. At the effective date of the policy, June 1, 1947, plaintiff was an insurance agent in the employ of defendant, working out of its Houston, Texas, office. Plaintiff was in charge of a 'debit' for defendant, his duties being to collect the weekly-premiums from policyholders of defendant upon policies issued by defendant to them, and to write such new business as he could. Plaintiff's compensation in such employment was paid weekly and represented commissions accruing to him upon the amount collected from his 'debit', and all new business written by him. * * *

"VI. Plaintiff performed his last service working out of the Houston Office of Defendant, on September 4, 1947, and on the following day left Houston and Texas for a vacation trip to the northern part of the country, expecting to be gone on a two-weeks vacation. However, he did not return to the Houston office of defendant until November 5 or 6, 1947, and after visiting the office on this occasion, plaintiff went to Beaumont, Texas, where he rendered services for defendant. The employment at Beaumont was on a salary basis, and plaintiff's salary at Beaumont was paid in full.

"VII. At the time plaintiff left Houston on September 5, 1947, there was accumulat-

ed in his 'Debit Bond' in the hands of the defendant, the sum of $196.00. On the occasion of plaintiff's visit to defendant's Houston office on November 5 or 6, the 'Debit Bond' was paid to plaintiff by defendant's local Manager in the amount of $196.00.

"VIII. On the occasion of plaintiff's visit to defendant's Houston office on November 5 or 6, 1947, defendant's Cashier in that office requested plaintiff to pay the premiums due upon plaintiff's hospitalization insurance, called 'Blue Cross' insurance (carried by plaintiff in a company other than defendant company), and for payment of premium upon the policy involved in this suit. Plaintiff paid the premium due upon the 'Blue Cross' insurance in the amount of $8.00. Defendant's Cashier told plaintiff that she did not know the amount of premium payable upon the policy involved in this suit, but stated that she would let him know, and he, Mr. Nelligan, could pay her later, and that until then it would be 'taken care of'; whereupon plaintiff left without making any payment of premium upon the policy involved in this suit. No premium on said policy was paid either in cash or by deduction or book credit subsequent to that occasion and before his injury on November 29, 1947.

"IX. At the end of the week beginning September 8, 1947, plaintiff was paid by defendant all commissions due him by the defendant to that date for services with the defendant. No commissions or other compensation were payable by defendant to plaintiff after said September 8, 1947, until, as above stated, he resumed working for defendant at its Beaumont office on November 17, 1947, as above stated. * * *

"XII. During the period from October 1, 1947, to November 6, 1947, no salaries or commission were owing by defendant to plaintiff and the only funds represented by the 'Debit Bond', which had been deposited with defendant by plaintiff as hereinabove stated."

"Conclusions of Law. I. I conclude that the transactions between plaintiff and defendant's Cashier, occurring on November 5 or 6, 1947, as hereinabove stated, constituted a waiver by the defendant of the obligation of plaintiff to timely pay the premiums provided by the policy in suit, with reference to the premiums which should have been paid on October 1, 1947, and November 1, 1947, respectively, and that the policy of insurance involved in this suit was, therefore, in full force and effect on November 29, 1947, the date of plaintiff's accidental personal injury."

After a review of the record, this Court is constrained to sustain appellant's contention that the policy was shown to have lapsed on October 6, 1947, hence was not in effect at the time of appellee's injury on November 29, 1947.

While, as indicated, the appellee did not attach a copy of the policy to his pleadings, the original, or photostatic copy thereof, was in evidence and there was no dispute as to its provisions. The controlling provisions, as affected this suit, were these:

"All benefits under this Policy, and the Policy, shall lapse, without notice by the Company to the Insured, for non-payment of premium when the premium payments are five (5) days or more in arrears. In the event of the lapsation of this Policy, the Company shall reinstate the same upon satisfactory proof of insurability, and the payment of all premiums in arrears, but only to cover such accidental injury as may be sustained or sickness as may begin more than ten (10) days after the date of such reinstatement.

"Agents (which term includes managers and superintendents) are not authorized and have no power to make, alter or discharge contracts, waive forfeitures or to receive premiums on Policies in arrears more than five (5) days, or to receipt for same in the receipt book, and all such arrears given to an agent shall be at the risk of those who pay them, and shall not be credited upon the policy whether entered in the receipt book or not."

It is true that this policy was one between the appellant and its insurance-agents, such as the appellee was, but it plainly recited on its face that: "This insurance shall take effect from 12:00 o'clock noon, standard time, of the place of the residence of the insured, of the date hereof (date of issue), to 12:00 o'clock noon, such standard time, one month hence, and

212

this policy may be renewed and continued for a term of one month by the payment of the premium herein mentioned for such term, each month in advance."

This made it, in law, a "month-to-month" health and accident policy, which became effective from noon of June 1, 1947, to noon one month thereafter, hence it could only be renewed or continued in force for the term of another month by the payment of the $2 monthly premium therein called for in advance; otherwise, it lapsed without notice to the insured for non-payment of the premium, five days after it became due.

The appellee was an experienced agent, working out of appellant's Houston office, under the direction of its local manager, so that he well knew the precise conditions attending his relationship with the appellant, and the terms of the policy he held under it.

The trial court's judgment, as its stated findings and conclusions show, was based wholly upon its conclusion that the appellant's cashier, Mrs. Stubblefield, bound the appellant-company to a waiver of the expiration provisions of the policy by her statement to the appellee on the 5th or 6th day of November of 1947 that she did not then know the amount of premium which was due on the policy, but that she would let him know, and he could pay her later, and that, until then, it would be taken care of.

As this Court understands the well-settled law ruling such states of fact, that holding of the trial court, upon the indisputable facts—that is, that the agent had so been expressly denied any such authority—constituted reversible error.

The principle of law applicable has been thus stated: In all cases the binding force of an act done, or omitted to be done by an insurance agent, and relied on as a waiver of a forfeiture, is to be measured by the agent's apparent authority, and if there is any limitation on the agent's authority of which the insured had notice, he can claim no advantage from anything done by the agent in excess thereof. Sun Mutual Insurance Co. v. Texarkana Foundry etc., 4 Willson Civ.Cas.Ct.App. §

31, 15 S.W. 34. Other authorities to the same effect may be thus collated: Southland Life Ins. Co. v. Lawson, 137 Tex. 399, 152 S.W.2d 953, 136 A.L.R. 1212; Pennsylvania etc. Co. v. Faires, 13 Tex.Civ.App. 111, 35 S.W. 55; American National Ins. Co. v. Roberts, Tex.Civ.App., 146 S.W. 326; Bankers' Reserve Life Co. v. Sommers, Tex.Civ.App., 242 S.W. 258, err. dism.; Texas Prudential Ins. Co. v. Howell, Tex. Civ.App., 119 S.W.2d 1100; Northwestern, etc. Co. v. Mize, Tex.Civ.App., 34 S.W. 670; Westchester, etc. Co. v. Wagner, 10 Tex.Civ.App. 398, 30 S.W. 959; Texas State Mutual Fire Ins. Co. v. Richbourg, Tex.Com.App., 257 S.W. 1089; Home Ins. Co. v. Lake Dallas Gin Co., 127 Tex. 479, 93 S.W.2d 388.

In other words, there is no dispute in the facts as to what transpired between the appellee and the appellant's local agents and office force; he paid a premium on his policy September 1, 1947, which extended it to October 1 thereafter; on that date he could have paid another extending it for another month, but he did not do so by October 6th, nor at any time thereafter; neither did he thereafter pay a premium on November 6th, or at any time later, so that the trial court's finding of fact and conclusion of law that the policy did not lapse for such nonpayments because the Company's cashier told him on November 5th or 6th that it would be taken care of, and he could pay her later, amounted to the court's holding that the appellant—by merely clothing such cashier with authority to receive premiums and record such receipts in its office—had, in fact, invested such employee with authority to waive the policy provision touching timely payment of such premiums, in direct contradiction to the quoted terms thereof.

Indeed, under the law, as declared by the cited authorities, the appellee himself, by declaring upon and offering the policy in evidence as the sole basis of his claims herein, established that the cashier with whom he so dealt had no authority to waive those specific forfeiture-provisions of such a short-time policy of insurance as he so declared upon. So that, in such circumstances, they being the sole basis for the appellee's claim, as well as the trial court's

judgment upholding it—the appeal comes here without any evidence at all indicating any intention upon appellant's part to waive the explicit provisions to the effect that its agents were not authorized to excuse forfeitures as provided in the policies, or to accept premiums on lapsed policies.

It seems further clear that this policy, being, as indicated, of the "month-to-month" type, with its specific provisions for prompt compliance with the premium payments, was not waivable by what the lady cashier was charged by the appellee to have done. The authorities appear to have so directly held, in such cases as these: National Life, etc., Co. v. Reams, Tex.Civ.App., 197 S.W. 332; National Life, etc., Co. v. Casillas, Tex.Civ.App., 63 S.W.2d 396; Donaldson v. National Life & Accident Insurance Co., Tex.Civ.App., 53 S.W.2d 136; Guaranty Old Line Ins. Co. v. Winstead, Tex.Civ.App., 91 S.W.2d 1164, writ dism.

In other words, the law seems to be well recognized to be, as thus stated in the Casillas case [63 S.W.2d 397], to-wit: "The insured is under no obligation to pay the monthly renewal premium, and by refraining from such payment may drop the policy at the end of any month. And the insurer is under no obligation (1) to continue the policy in force beyond any current month, and cannot be held to a continuance thereof, unless it receives and accepts the premium therefor on or before the due date; or (2) to reinstate the policy after lapse on default, unless and until it receives and accepts the premium therefor."

Further discussion is deemed unnecessary, since these conclusions determine the merits of the appeal. They require that the appealed-from judgment be reversed, and the cause for recovery upon the policy so declared upon be here rendered in appellant's favor.

In connection with his answering brief, the appellee has set out what he terms a "cross-point-of-error", in which he protests against the allowance by the court of a recovery against himself upon some notes of his in the sum of $343.32, alleged to have been held by the appellant and charged against him in the accounting between

them, disposed of, as above indicated, by the trial court's judgment.

However, no such briefing nor showing from the record as the rules, Nos. 418 and 420 et seq., Texas Rules of Civil Procedure, require, have been presented, whereby this Court might be enabled to pass upon such a presentment. Moreover, no assignment as a basis therefor was filed either below or here; in fact, there was no motion for a new trial below by either, and the appellant alone there gave notice of an appeal.

In any event, in view of the reversal and rendition upon the grounds indicated, such matter would seem to have become wholly immaterial anyway.

Reversed and rendered.