The PRUDENTIAL INSURANCE COM-
PANY OF AMERICA, Appellant,

v.

Sidney L. LEVINSON, Appellee.

No. 7061.

Court of Civil Appeals of Texas.

Beaumont.

Sept. 4, 1969.

Mehaffey, Weber, Keith & Gonsolin, Beaumont, for appellant.

Waldman & Smallwood, Moore, Moore & Landrey, Bobby C. Williams, Beaumont, for appellee.

PARKER, Chief Justice.

Sidney L. Levinson sued Prudential Insurance Company of America for benefits under an accident and health insurance policy issued by Prudential, with Mrs. Levinson as the Insured. Prudential Insurance Company defended and counterclaimed for rescission of the policy on the ground that the issuance of the policy had been induced by false statements about Mrs. Levinson's health history which were material to the risk, tendering all premiums paid it into the registry of the court. Trial was had to a jury, and the trial court entered judgment in favor of the Levinsons against Prudential, based upon the jury's verdict. From that judgment, Prudential has properly and timely perfected this appeal. The parties will be designated as in the trial court or by name. Judgment of the trial court is reversed and judgment rendered for Prudential.

The jury found, in answer to the special issues numbered below:

*No. 6:*
The statements relating to the health history of Mrs. Levinson, reflected in the application for insurance, were false.

*No. 7:*
Mrs. Levinson did not know the statements relating to her health history, contained in the application, to be false.

*No. 8:*
The statements relating to the health history of Mrs. Levinson contained in the application for insurance were not

made for the purpose of inducing issuance of the policy in question.

*No. 9:*

The statements relating to the health history of Mrs. Levinson, made in the application for insurance, were material to the risk.

*No. 10:*

The statements relating to the health history of Mrs. Levinson, contained in the application, were relied on by the insurer.

Prudential filed a motion for instructed verdict, and a motion for judgment non obstante veredicto, moving the court to disregard the jury's answers to Special Issues Nos. 7 and 8, because there is no evidence to support the jury's answers thereto. Prudential had points of error contending the trial court erred in entering judgment for the plaintiff and against the defendant, because, as a matter of law, Mrs. Levinson knew the statements relating to her health history contained in the application were false, and, as a matter of law, the statements were made for the purpose of inducing issuance of the policy in question. The same contention was made by Prudential with reference to its motion for instructed verdict. Prudential prays the judgment of the trial court be reversed and rendered. This contention is sustained.

Sidney L. Levinson, the plaintiff, testified that on December 11, 1964, he was visited by an agent of Prudential Insurance Company of America, namely, George Shakour. He applied for insurance for himself, his wife, and children. The agent prepared the application, filling it out in accordance with the answers of Levinson to questions asked him. Then Levinson signed the application on the bottom of the application in the place indicated. Sometime after the application was made, the agent told Levinson that Prudential would not cover him, but that the company would cover Mrs. Levinson and the Levinsons' two girls, bringing back the application. Mrs. Levinson signed an amendment, authorizing Prudential to amend the application for the policy so that the policy was issued

"to the applicant Sidney L. Levinson who is not to be covered under the policy, with the wife Goldie W. Levinson to be named therein as the Insured and vested with all rights and privileges under the policy after issue as provided in the provision of the policy entitled 'Control; Successor Insured';

"and it is agreed that this amendment is to form a part of said application and that a copy hereof is to be attached to the Policy.

"I have signed the copy of this amendment form remaining attached to the Policy as well as the copy for the Home Office.

Proposed
/s/ Goldie W. Levinson Insured"

The application, as originally signed by Mr. Levinson, and the amended application, incorporating the original application dated December 1, 964 as signed by Mrs. Levinson, were attached to and formed a part of the policy. The application contained the question:

"31. Does any person to be covered have any known indication of any physical disorder, disease, defect, or abnormality not disclosed in the answers to Questions 28, 29 and 30?"

To which the answer given was "No."

Question 30 on the application read as follows:

"30. Other than as disclosed in the answers to Questions 28 and 29, has any person to be covered, within the past 5 years, ever consulted or been attended by or been examined or had a check-up by any physician or other practitioner?"

To which the answer given was "Yes."

Question 35 then went on to ask:

"35. With respect to each person to be covered, what are the full particulars of each and every part of Questions 28 through 33 to which the answer is 'Yes'?"

From defendant's brief we adopt and quote:

"In response to Question 35, there were four handwritten entries, three pertaining to Sidney L. [Levinson] and only one pertaining to Mrs. Levinson. That one entry reflected that Mrs. Levinson had had a hemorrhoid problem in 1957, and had been treated therefor by Dr. Fred Colby.

"Mrs. Levinson testified that she remembered being treated by Dr. Pratt for elevated blood pressure in 1960 or 1961, and taking medication for that condition. She admitted that this fact did not appear on the application.

"Mr. Levinson testified that he knew his wife had had elevated blood pressure, and did not disclose this fact on the application. He knew as early as 1962 that his wife was seeing Dr. Pratt. At the time Levinson signed the application, he knew that his wife had taken medicine to lower her blood pressure, but that was not on the application.

"More particularly, Levinson testified as follows:

"'Q. Now, nowhere did you indicate that on this answer to No. 35, that Mrs. Levinson had experienced hypertension or high blood pressure or a blood pressure problem, is that right?

"A. That's right.'

"He further testified:

"'Q. And it is true, and you knew it to be true, that Mrs. Levinson had high blood pressure problems?

"A. No, I didn't, high blood pressure problems.

"Q. Call it hypertension or high blood pressure, you knew that Mrs. Levinson had had hypertension and—

"A. A checkup, yes.

"Q. And you knew that at the time you signed the application?

"A. That's right.

"Q. And it is not reflected on the application, is it?

"A. That's right.

"Q. So the application as submitted to Prudential is not correct, is it?

"A. That's right, in the atmosphere of which it was taken.'"

Dr. Pratt's records reflected visits by Mrs. Levinson from 1960 through 1966. The notes indicated that Mrs. Levinson saw Dr. Pratt three times in 1962, having blood pressure as high as 200/110, and taking medication. She saw Dr. Pratt two times in 1963, taking medication. Then, in 1964, Mrs. Levinson saw Dr. Pratt four times with blood pressure as high as 200/100, and again she was taking medication. On July 18, 1964, Dr. Pratt's notes showed Mrs. Levinson to be "confused, rambling, irrational speech."

Mr. Russell Belcher, the Prudential underwriting consultant, testified that under the underwriting rules of Prudential it was the decision of this department in Houston to determine whether a policy would be issued or not; that under the underwriting rules of Prudential, the policy would not have been issued to Mrs. Levinson if her blood pressure problems had been revealed on the application; that the decision to issue the policy or not was to be determined by the underwriting consultant. The policy itself provides, over the signature of Mr. Levinson:

"I hereby declare that the above statements and answers to the above questions are complete and true and include full particulars of each and every part of Questions 28 through 34 to which the answer is 'Yes'. I agree: (1) that this application and any medical examination, designated as Part 2 of this application, required by the Company on myself, my spouse or any dependent child now proposed for coverage, and any amendment of this application and any supplementary declaration thereto shall constitute the application for insurance and

become a part of the policy hereby applied for; (2) that no agent has the authority to waive the answer to any question in the application, to waive a condition of any policy issued as a result of the application, or to waive any of the Company's rights or requirements with respect to the application, to modify the application, or to bind the Company by making any promise or representation or by giving or receiving any information; * * *"

In Lindley v. Franklin Fire Ins. Co., 137 Tex. 196, 152 S.W.2d 1109 (1941), on page 1111, the court held:

"However, it is now the well settled rule of this State, where the application for insurance is attached to the policy and is made a part of same, that the insured becomes bound by the representations and warranties made therein, whether signed by the insured or not; and material provisions and conditions of the policy cannot be waived by the agent, when the limitations on the agent's authority are set forth in the application and in the policy. Texas State Mutual Fire Ins. Co. v. Richbourg, Tex.Com.App., 257 S.W. 1089; Home Ins. Co. v. Lake Dallas Gin Co., 127 Tex. 479, 93 S.W.2d 388, and authorities therein cited."

Mr. Levinson, who originally furnished the information, knew the contents of the application and each item of information therein at the time he signed it, and that the insurance company would have to use the application as a basis for deciding whether or not to issue the policy. When Mrs. Levinson signed the amendment to the policy, she knew she had been to see Dr. Pratt for elevated blood pressure. She signed the amended application knowing that it would form the basis of the insurance policy to be issued, testifying:

"Whatever was necessary to put the policy in force he handed to me and I signed."

Mrs. Levinson signing the amendment to the application had the duty to read it and is bound by the contents of the application and the facts and omissions therein within her knowledge at the time. She ratified the action of her husband in making false representations, made for the express and only purpose of getting an insurance policy issued. San Angelo Life & Accident Ass'n. v. Haynes, 106 S.W.2d 363 (Austin, Tex.Civ. App., 1937, error dism). As held in Texas Industrial Trust v. Lusk, 312 S.W.2d 324, 327 (San Antonio Civ.App., 1958, writ refused):

"The utterance of a known false statement, made with intent to induce action, * * *, is equivalent to an intent to deceive. Accord, Hartford Accident & Indemnity Co. v. Graves, Tex.Civ.App., 148 S.W.2d 859, 861."

Both Mr. Levinson and his wife knew she had a serious situation with high blood pressure. Levinson knew the falsity of his answers on the application, which is binding on Mrs. Levinson. There can be no conclusion except that the false answers were for the purpose of inducing the insurance company to issue the policy. The false statements on the application were material to the risk, and relied upon by Prudential.

The evidence only favorable to the findings of the jury in answer to Special Issues Nos. 7 and 8 is considered in passing upon the no-evidence points. Prudential's no-evidence points with reference thereto are sustained. Allen v. American National Insurance Company, 380 S.W.2d 604 (Tex. Sup., 1964), which cites and approves the holding in Texas Industrial Trust v. Lusk, supra.

So holding, the other points of error of defendant are immaterial and are not considered.

Judgment of the trial court is reversed and judgment rendered for Prudential Insurance Company of America, cancelling the insurance policy issued to Sidney L. Levinson with Mrs. Levinson as an insured, with Mr. Levinson recovering the premiums tendered into the trial court. All costs are adjudged against Sidney L. Levinson.

KEITH, J., not sitting.